(No. 18078.—▮▮▮▮▮▮)

Alexander J. Morgan, Appellant, *vs.* The National Trust Bank of Charleston *et al.* Appellees.

*Opinion filed June 23, 1928—Rehearing denied October 3, 1928.*

C. C. LEE, and CRAIG & CRAIG, for appellant.

OSCAR E. CARLSTROM, Attorney General, HARLINGTON WOOD, S. S. DUHAMEL, A. C. & BEN F. ANDERSON, and REARICK & MEEKS, for appellees.

Mr. Commissioner Partlow reported this opinion:

Appellant, Alexander J. Morgan, filed his bill in the circuit court of Coles county to partition the land of which William D. Morgan, his brother, died seized. The bill was filed on the ground that the purported last will and testament of the testator was invalid and the real estate descended to the three brothers of the deceased in equal parts as intestate property. Upon issue being joined there was a hearing before the chancellor, the bill was dismissed for want of equity, and an appeal was prosecuted to this court.

William D. Morgan died in Coles county on April 15, 1926, leaving a written instrument purporting to be his last will and testament. His only heirs-at-law were his three brothers, Alexander J., Ralph D. and J. C. Morgan. He was the owner of 326.22 acres of land in Coles county, twelve lots in the village of Rardin, Coles county, and a house and lot in Charleston. The will was admitted to probate and the National Trust Bank of Charleston was appointed executor. The will consisted of seven paragraphs and was substantially as follows: The first paragraph provided for the payment of debts and funeral expenses. The second paragraph devised all of the real estate to the National Trust Bank of Charleston, to be held in trust for the following purposes: (a) One-seventh of the income was to be paid to the First Presbyterian Church of Charleston, to be used for incidental expenses; (b) one-seventh was to be paid to the Home Missionary Society of said church, to be used for home missions; (c) one-seventh was to be paid to the Foreign Missionary Society of said church, to be used for foreign missions; (d) one-seventh was to be paid to the Presbyterian Church of Rardin; (e) one-seventh was to be paid to Florence Marlatt for life and after her death it was to go to the M. A. Montgomery Memorial Sanitarium, to maintain free beds for indigent patients; (f) one-seventh was to be paid to Gertrude Born for life

and after her death to the Coles county chapter of the Red Cross, and in case the Red Cross ceased to function it was to be paid to the student fund of the Eastern Illinois State Teachers' College; (*g*) "one-seventh to a fund to be known as the Student Fund of the Eastern Illinois State Teachers' College, said fund to be under the jurisdiction and supervision of the president, business manager and head of the department of mathematics of said college, and my trustee is hereby authorized to loan said fund or some part of it, at a reasonable rate of interest, to indigent students, under the advice and recommendation of said president, business manager and head of the department of mathematics." The third paragraph provided for a payment of $50 annually to Lois Morgan. The fourth paragraph gave $150 for the maintenance of a cemetery lot. The fifth paragraph provided for the sale of the Charleston property by the trustee, the payment of debts out of the proceeds, and "the money remaining to be divided equally between the student fund of the Eastern Illinois State Teachers' College and the M. A. Montgomery Memorial Sanitarium. Said money to be loaned, the interest only to be used by the aforesaid institutions; that to the student fund to be used as before mentioned for the purpose of assisting indigent students in obtaining an education, said money is to be loaned at a reasonable rate of interest, such money is to be under the jurisdiction of the members of the faculty as before mentioned; the interest on the fund to the sanitarium is to be used to help in maintaining a free bed for indigent patients." The sixth paragraph bequeathed the personal property to the trustee, "to be held in trust for the same purposes above stated with reference to the real estate." The seventh paragraph appointed an executor and trustee.

The bill attacked as illegal substantially every gift provided for in the will, but on this appeal the complaint is limited to sections (*f*) and (*g*) of the second paragraph

and to the fifth paragraph, which cover the bequests to the student fund of the Eastern Illinois Teachers' College.

It is insisted by appellants, first, that the provisions of the will directing the student fund to be loaned at interest, when taken in connection with the devise of all the real estate and personalty to the National Trust Bank of Charleston in perpetual trust, create an invalid perpetuity, which could not be supported as a valid charitable bequest; and second, that if these provisions of the will with reference to the student fund are invalid the entire will must fail, under the doctrine that where the trust created is one entire scheme and some of the trusts are legal and some are illegal all must be construed together and if one fails all must fail. It is conceded by appellant that all of the gifts provided for in the will, except the gift to the student fund, would be valid charitable bequests, and not invalid on account of the perpetual trust, if they stood alone and were not parts of an indivisible trust, but that none of them are valid because they are a part of an indivisible trust and they must all fail with the invalid portion thereof. The principal grounds for claiming that the gift to the student fund is invalid are that it provides for the collection of interest from indigent students to whom the fund may be loaned, therefore it constitutes a trust for profit, it is not a charitable trust, and it falls within the rule against perpetuities.

A charity has been defined by this court as a gift to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, relieving their bodies from disease, suffering or constraint, by assisting themselves to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. (*Skinner* v. *Northern Trust Co.* 288 Ill. 229; *Crerar* v. *Williams*, 145 id. 625.) The test as to whether an enterprise is charitable is whether it exists to carry out a purpose recognized in law

as charitable or whether it is maintained for gain, profit or private advantage. (11 Corpus Juris, 303.) In order that a gift or devise to charity shall possess that certainty which will give it validity the language used must require that the funds shall be expended for some charity according to the legal signification of that word and for nothing else. A trust which by its terms may be applied to objects which are not charitable in the legal sense is too indefinite to be carried out. In determining whether or not a gift is for a charitable purpose the question is not whether the trustee may. apply it to purposes strictly charitable; it is whether or not he is bound to apply it to charitable purposes only. (*Wilce* v. *VanAnder*, 248 Ill. 358; *Haight* v. *Royce*, 274 id. 162; *Nichols* v. *Allen*, 130 Mass. 211; 11 Corpus Juris, 328, 330; 5 R. C. L. 341, 351.) A gift to be used strictly for a charitable purpose does *not* violate the rule against perpetuities. (*Skinner* v. *Northern Trust Co. supra; Franklin* v. *Hastings*, 253 Ill. 46; *Crerar* v. *Williams, supra; Heuser* v. *Harris*, 42 Ill. 425; 5 R. C. L. 300.) A perpetuity is a limitation taking the subject matter of the perpetuity out of commerce for a period of time greater than a life or lives in being and twenty-one years thereafter. (*Bigelow* v. *Cady*, 171 Ill. 229.) If by any possibility a devise violates the rule against perpetuities it cannot stand. If there is a possibility that a violation of this rule can happen then the devise must be held void. (*Waldo* v. *Cummings*, 45 Ill. 421; *Post* v. *Rohrbach*, 142 id. 600; Gray on Perpetuities, secs. 214-369, 374.) Neither will the violation of the rule against perpetuities be tolerated when the property is covered by a trust any more than when such violation actually appears in the creation of a legal estate. *Howe* v. *Hodge*, 152 Ill. 252.

The fact that a school or hospital which is named as the beneficiary in a charitable trust charges fees or collects tuition does not render a gift non-charitable, provided the main object of the gift is charitable. In the statute of

charitable uses, (43 Eliz. chap. 4,) which is a part of the common law of this State, (*Heuser* v. *Harris, supra; Andrews* v. *Andrews,* 110 Ill. 223; *Welch* v. *Caldwell,* 226 id. 488;) schools of learning and free schools are mentioned as charitable objects, and it has been held that the fact that they require students to pay tuition does not change their character as charitable institutions. (*Parks* v. *Northwestern University,* 218 Ill. 381; *Andrews* v. *Andrews supra;* 6 Cyc. 974.) In 11 Corpus Juris, 304, it is said: "Provided a corporation or association can otherwise be classed as a charitable one, the fact that it receives pay from some of the students, inmates or patients, or other persons to whom it extends benefits, detracts nothing from its character as a purely charitable institution. The original eleemosynary character of the institution is not transformed by this patronage, even if sufficient to relieve it from financial burdens, but the charity as established remains unaffected." To the same effect are 3 L. R. A. (n. s.) 536, and 6 Cyc. 974. Under these authorities the charging of interest did not, alone and of itself, change the character of the trust in this case. The mere fact that the gift to the student fund was placed in the hands of a trustee and was to be loaned under the direction of a committee of officers of the college did not change the nature of the gift. It was a gift for the benefit of the indigent students of the college, regardless of whether it was placed in the hands of a trustee or went directly to the college or its officers.

The contention that by charging interest the gift became a gift for profit and therefore lost its charitable nature is based largely upon the ground that the interest received by the trustee went into another fund and did not become a part of the student fund and that there was no direct provision in the will for its disposition. The intention of the testator must be ascertained from the whole will. Effect must be given to the intention expressed, and not to some other intention which may be inferred from surround-

ing circumstances but which the testator did not express. (*Bushman* v. *Fraser,* 322 Ill. 579; *Schmidt* v. *Schmidt,* 292 id. 275; *Bond* v. *Moore,* 236 id. 576.) Gifts to charity are looked upon with favor by the courts, and they will indulge every presumption consistent with the language used to sustain such gifts. (*Skinner* v. *Northern Trust Co. supra; Franklin* v. *Hastings, supra.*) Courts will not allow a charitable gift to fail on account of illegal or impracticable methods of exercising the trust. (*Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442.) It is apparent from the whole will that the testator intended to dispose of his entire property and provide a complete scheme for its use for charitable purposes. He did not intend that any part of it should remain or should become intestate estate. In all private trusts courts treat the interest on the trust fund as a part of the principal and attach it to the principal as belonging to the beneficiaries of the trust estate. (*County of Lake* v. *Westerfield,* 273 Ill. 124; *White* v. *Sherman,* 168 id. 589.) The trust here created was not for the purpose of loaning money or for gain, profit or private advantage. The interest charged was a mere incident of the trust and was not for profit or for the benefit of the estate or the trustee. The interest, as well as the principal, was to be used for the purpose of aiding indigent students, and such was the intention of the testator. The interest may not have been for the benefit of the indigent student who paid it, but it went to the enlargement and benefit of the student fund and was for the benefit of indigent students who might want to borrow from the fund in the future. By charging interest the fund was increased and preserved so that more students could receive the benefit thereof. It is apparent that it was not the intention of the testator that any interest derived from the fund should remain in the hands of the trustee as a separate fund or should be used for any purpose other than the assisting of indigent students.

Appellant insists that the gift cannot be sustained as a charitable trust for educational purposes because it did not provide that the fund was to be loaned to indigent students for educational purposes or for the purpose of assisting them to procure an education, but the trustee might loan the fund for any purpose, or for no special purpose, to any person considered by him to be an indigent student; that the trustee had unlimited discretion as to the purpose for which the fund should be loaned or to what use the indigent student should apply the money; that if the student was indigent he might need money for many things other than schooling and might not use the money for any educational purpose whatever; that it might be used to re-pay a prior loan made by the trustee; that the purpose of the trust must be stated with certainty and not left to the discretion of the trustee; that there is no provision as to where the indigent student shall reside, where he shall come from or what school he shall attend; that the provision that the trustee may loan the fund "at a reasonable rate of interest or loan some part of it" is in the alternative and gives the trustee power to do one but not both; that the trustee thus has an option and may use part of the fund for indigent students and part for other purposes not charitable, hence the gift, not being limited to charity, was void. None of these contentions can be sustained under the language used in the will. Section (f) of the third paragraph provides that one-seventh is to be paid to the student fund of the Eastern Illinois State Teachers' College. Section (g) of the same paragraph provides that the fund shall be known as the Student Fund of the Eastern Illinois State Teachers' College and shall be under the jurisdiction and direction of the three persons therein named, and shall be loaned by the trustee to indigent students under the advice and recommendation of these three persons. The fifth paragraph provides that the remainder of the money, after the payment of the debts of the estate, shall be divided equally, one-

half to go to the student fund of the Eastern Illinois State Teachers' College, said money to be loaned and the interest only to be used; that the student fund is to be used, "as before mentioned, for the purpose of assisting indigent students to obtain an education," the loans to be made under the jurisdiction of the members of the faculty before mentioned. In the sixth paragraph the personal estate goes to the trustee "for the same purpose above stated with reference to the real estate." Under these various recitals, considered together, there can be no doubt as to the intention of the testator or as to the purpose of the gift. It was his expressed purpose and intention to make these gifts to the student fund of the Eastern Illinois State Teachers' College and to no other institution; they were to be administered by the trustee under the jurisdiction, supervision and upon the advice and recommendation of the officers named; and they were for the purpose of assisting indigent students of that institution in obtaining an education, and for no other purpose. If students who applied were students of that institution they came within the provisions of the will, regardless of their place of residence. The trustee was authorized to loan all or any part of this fund for that purpose and for no other purpose. The provisions of the will were explicit in these respects and were not capable of the construction sought to be placed upon them by appellant.

Dr. L. C. Lord, president of the college, testified that he had a conversation with the testator in which the testator said he wanted to leave some money to the student fund and wanted to know who would handle the fund, and the witness replied that it would be handled by the president, business manager and the head of the department of mathematics. Evidence was admitted as to the existence of a student fund in the college, its amount, how it was raised and handled and to whom reports were made. Appellant insists that the admission of the conversation with the testator was error, and its effect was to make a new will for

the testator by oral evidence, in direct contravention of the Statute of Wills. Extrinsic evidence is never admissible to alter, detract from or add to the terms of a will. (*Fuller* v. *Fuller,* 315 Ill. 214; *Brown* v. *Ray,* 314 id. 570; *Pool* v. *Pool,* 300 id. 557.) Parol evidence is admissible to identify the beneficiaries and place the court in the situation of the testator and disclose what he had in mind. (*Hitchcock* v. *Board of Home Missions,* 259 Ill. 288; *Woman's Missionary Society* v. *Mead,* 131 id. 338.) The evidence of the conversation with the testator did not make a new will or change any of its provisions. It merely showed that the testator wanted to leave some money to the student fund and wanted to know how it would be handled. By his will he left money to the fund and provided how it should be handled. We cannot see that the conversation caused any injury to appellant or that it was in any way material. The testimony as to the student fund merely identified the fund and was competent. When the competent evidence sustains the decree it will not be reversed for error in the admission of evidence where the case is tried by the chancellor without a jury. The admission of improper evidence is reversible error only where the decree cannot be sustained upon the competent evidence. (*Allen* v. *McGill,* 311 Ill. 170; *Clark* v. *Waggoner,* 283 id. 199; *Morton* v. *Babb,* 251 id. 488.) There was sufficient competent evidence to sustain the decree even though some incompetent evidence may have been admitted.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*