(No. 19686.—

CHARLES P. WEBB *et al.* Appellants, *vs.* MELISSA A. WEBB *et al.* Appellees.

*Opinion filed June 20, 1930—Rehearing denied October 11, 1930.*

SHELTON F. McGRATH, and C. R. BIRKETT, for appellants.

MILLER, ELLIOTT & WESTERVELT, EAGLETON & EAGLETON, FRANK J. QUINN, and JOSEPH A. WEIL, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here to review a decree of the circuit court of Peoria county denying relief sought by appellants in their bill to construe the will of Thomas H. Webb, deceased, which bill prayed that the will be held to be illegal and void. The chancellor decreed that appellants have no interest in the estate devised and bequeathed other than the annuities given to them under the second clause of the will and that the will was in all particulars valid.

Thomas H. Webb died July 14, 1928. His will, executed June 1, 1928, was admitted to probate in the probate court of Peoria county. His widow, Melissa A. Webb, and appellants, Charles P. Webb and Lillie M. Webb Ayers, brother and sister of the deceased, are his only heirs-at-law. The widow filed a written renunciation under the statute, electing to take one-half of the real and personal estate of the deceased. On August 10, 1928, appellants filed their

bill of complaint, alleging that the will is void for the reason that it attempts to create an indestructible trust in perpetuity for the benefit of individuals and that it contains directions for the accumulation of income, contrary to a statute of the State. Answers were filed by various parties made defendants, denying the allegations of the bill and alleging that the will was in all respects legal and valid. An agreed statement of facts was filed and a hearing was had before the chancellor, who entered a decree finding the will valid.

The will by clause 2 gave to appellants and others certain annuities for life. In so far as material here the remaining clauses are as follows:

"*Fourth*—My executors and trustees, hereinafter named, shall keep my real estate intact and the same shall not be mortgaged during the period of the trust hereby created; provided, however, that my executors and trustees may mortgage any part thereof for the purpose of providing funds to pay State inheritance and Federal estate taxes.

"*Fifth*—Part of lot eleven (11) in block nineteen (19) in the original town, now city of Peoria, Illinois, and parts of lots two (2) and four (4) in said block nineteen (19), original town, now city of Peoria, Illinois, (known as 214 Main street), and part of lot one (1) block six (6) in the original town, now city of Peoria, Illinois, (known as 217 Main street), may be sold and conveyed free and clear of lien of annuities provided in paragraph second hereof, by my executors and trustees, hereinafter named, if they shall be of the opinion that it is for the best interests of my estate to sell and convey the same, and the proceeds invested as hereinafter provided.

"*Sixth*—My executors and trustees, hereinafter named, are hereby authorized and empowered to execute (99) year lease or leases, or for shorter periods, upon any of my real estate, using my regular form of leases, and all rent payable in monthly installments in advance. All ninety-nine-

year leases shall provide for a substantial improvement within a specified time, and a cash deposit to secure the same which is to be refunded to lessee when improvement is completed. The present and future value of the property is to be considered in the making of all leases, and I recommend an increase of five per cent (5%) in rent every ten years. In case lessee fails to make improvements within the time limit, lessor is to keep deposit as liquidated damages.

"*Seventh*—All funds shall be invested in first mortgage liens, interest payable semi-annually, on real estate situated in the best retail districts of any of the following Illinois cities, viz.: Peoria, Bloomington, Decatur, Springfield or Rockford (Peoria preferred), or in bonds of the United States of America. The sinking fund hereinafter provided for shall be likewise invested. I also recommend that the funds of Melissa A. Webb shall be likewise invested.

"*Eighth*—My executors and trustees, hereinafter named, shall pay all State inheritance and Federal estate taxes out of funds or securities on hand at the time of my death, and not invested in Webb's Bank; provided, however, that if funds from such sources shall be insufficient to meet the same, then mortgage of my real estate may be made, as hereinabove provided in paragraph fourth of this my last will and testament, such mortgage to be paid out of sinking fund as herein provided in paragraph thirteenth.

"*Ninth*—'Net income,' as used and wherever used in this will, shall be construed to mean what remains after deducting annuities as herein provided, operating expenses, ordinary expenses, ordinary upkeep and ordinary repairs of every kind and nature, insurance, general and special taxes and assessments, State and Federal taxes of every kind and nature, in connection with both real estate and personal property, and the monthly computed sinking funds as hereinafter provided, but not including State inheritance or Federal estate taxes.

"*Tenth*—All annuities herein provided shall be paid in person to the parties named and shall not be subject to assignment, attachment, levy or other legal process whatsoever, and their payment shall only be subject to current expenses for repairs, taxes and maintenance computed monthly.

"*Eleventh*—None of the real estate shall be sold or mortgaged during the period of the trust herein created, except as provided by paragraphs fourth and fifth herein. All real estate shall be kept in good repair and reasonably improved and the cost and expense paid out of the earnings from the estate.

"*Twelfth*—Subject to the foregoing, I give and bequeath to Melissa A. Webb, my wife, all the net income from my estate for the period of her natural life, the same to be paid to her in person by my executors and trustees, semi-annually, on the 10th day of each May and November in so far as the same may be practicable, to do with as she pleases. All moneys invested by the said Melissa A. Webb, or for her, out of her income, shall be her absolute property to do with as she wishes at her death.

"*Thirteenth*—At the death of my wife, Melissa A. Webb, my said executors and trustees shall create a sinking fund for the purpose of re-payment of any indebtedness incurred by me or my executors and trustees for the securing of funds with which to pay State inheritance and Federal estate tax on my estate. Said fund shall be established out of rentals and income from my estate and shall be in such an amount as my executors and trustees shall determine is necessary or required to discharge such indebtedness, within a reasonable time after the death of my wife, Melissa A. Webb.

"*Fourteenth*—At the death of my said wife, Melissa A. Webb, and after the establishment of the sinking fund as provided in paragraph thirteenth hereof for paying indebtedness, I direct my executors and trustees to establish

a sinking fund for the purpose of replacement, restoration and improvement of the buildings and improvements on my real estate held in trust under this will, which said fund shall be used from time to time as may be required or necessary to restore, replace or make major improvements or additions to the buildings and improvements on said real estate and to at all times keep the same in reasonably good condition considering the location of such real estate and the best use of the same, and to insure an adequate income for the purposes of the charitable trust hereby created. My executors and trustees shall monthly pay into such sinking fund twenty per cent (20%) of the net income of my estate (exclusive of this sinking fund), and shall invest the same as provided in paragraph seventh hereof. The income from such sinking fund shall be added to the net income from my estate and used for charitable purposes as hereinafter provided. The principal of such fund shall be used as herein provided at such times as the executors and trustees shall deem it necessary to keep my real estate properly and adequately improved for the purpose of producing income for the benefit of the charitable uses as herein provided.

"*Fifteenth*—After the death of my said wife, Melissa A. Webb, and the establishment of the sinking funds provided in paragraphs thirteenth and fourteenth hereof, I give, devise and bequeath the net income from my estate, to be paid by my said executors and trustees out of the estate to be held by them in trust, as follows:

"(1) Twenty per cent (20%) to St. Francis Hospital of Peoria, Illinois, (a corporation organized for charitable purposes under the laws of State of Illinois), to be used in furtherance of its charitable work.

"(2) Forty per cent (40%) to Dan J. Goggin and Margaret Kronsted Goggin, his wife, share and share alike, or to the survivor, said payments to cease upon the death of both said Dan J. Goggin and Margaret Kronsted Goggin.

"(3) Forty per cent (40%) to Mabel Josephine Bresse, daughter of Joseph L. Mantz, and now residing in Champaign, Illinois, for her life. Upon the death of Mabel Josephine Bresse, the forty per cent (40%) of net income payable to her shall be payable to the said St. Francis Hospital of Peoria, Illinois, and used in the same manner as provided in paragraph fifteenth, section 1 hereof.

"*Sixteenth*—Upon the death of Dan J. Goggin and Margaret Kronsted Goggin the forty per cent (40%) of net income payable to them or the survivor shall be payable to said St. Francis Hospital of Peoria, Illinois, and used in the same manner as provided in paragraph fifteenth, section 1 hereof."

While the foregoing will does not contain words expressly devising or bequeathing the legal title to trustees, it is conceded that such is the effect of it. The property passed to and was immediately vested in the trustees for the uses and purposes of the trust by the will declared. It is conceded that the general scheme of the testator's will is that the executors and trustees are to hold, manage and control the entire estate in perpetuity for the benefit of the Sisters of the Third Order of St. Francis, Inc., for the use of St. Francis Hospital, located in the city of Peoria, which, it is also conceded, is a charity, and that after the death of the annuitants named, eighty per cent of the net income is to be paid to the St. Francis Hospital. No question is raised as to the disposition of this eighty per cent of the net income. The chief contention of appellants arises on the fourteenth clause of the will, which provides for the payment of twenty per cent of the net income into a sinking fund for the purposes therein set forth. The construction of this clause produces the main argument in the case. Appellants' claimed construction of clause 14 forms the foundation stone of their entire case.

Appellants contend that clause 14 violates the rule against perpetuities and is void for the reasons (1) that

it provides for an accumulation of income, in violation of the statute against accumulations, commonly known as the Thelluson act; (2) there is no provision in the will for the payment of such accumulations to anyone after twenty-one years allowed by the statute for accumulations, and therefore this twenty per cent of income must after that period be paid to heirs-at-law perpetually; (3) this being so, this trust provision is void as violating the rule against perpetuities; and (4) that the establishment of the sinking fund under clause 14 is a condition precedent to gifts to legatees under clause 15, and since clause 14 is void the gifts must likewise fall. Appellants do not in their argument contend that the testator may not create a perpetual trust for charitable uses and purposes, but they say, since the will makes no disposition of the twenty per cent for the sinking fund after twenty-one years and contains no residuary clause into which such fund would fall, the gift is thus rendered void.

The question first arising is whether clause 14 creates an illegal trust for accumulations. It directs that twenty per cent of the net income, exclusive of that arising from the sinking fund, shall be placed in this fund, "which said fund shall be used from time to time * * * to restore, replace or make major improvements or additions to the buildings and improvements on said real estate and to at all times keep the same in reasonably good condition considering the location of such real estate and the best use of the same, and to insure an adequate income for the purposes of the charitable trust hereby created." This clause also provides that the income from the sinking fund shall be added to the net income of the estate "and used for charitable purposes as hereinafter provided."

The act of the General Assembly on accumulations, commonly known as the Thelluson act, (Smith's Stat. 1929, chap. 30, par. 153,) in so far as material here, is as follows: "That no person or persons shall, after this act goes into

effect, by any deed or deeds, will, codicil or otherwise how-soever executed after this act goes into effect, settle or dispose of any real or personal property, so and in such manner, either expressly or by implication, that the rents, issues, profits or produce thereof shall be wholly or partially accumulated, for * * * any longer than the term of twenty-one years from the death of any such grantor, settlor, devisor or testator; * * * and in every case where any accumulation shall be directed otherwise than as aforesaid, such direction shall be null and void, and the rents, issues, profits and produce of such property so directed to be accumulated * * * contrary to the provisions of this act, go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed."

"Accumulation," as used in this act, arises in the following circumstances: "When an executor or other trustee masses the rents, dividends or other income which he receives, treats it as capital, invests it, makes new capital of the income therefrom, invests that, and so on, he is said to accumulate the fund, and the capital and accrued income thus procured constitute accumulations." (Black's Law Dict.; *Hussey* v. *Seargent,* 116 Ky. 53, 75 S. W. 211.) Our act against accumulations was taken from the English statute. The construction of that statute by the English courts is to the effect that a direction for the application of income to the repairing and reinstating of buildings is not an accumulation within the meaning of the act, though if the direction extend to the erection of new buildings on unimproved land the act applies. (*Vine* v. *Raleigh,* 2 Ch. Rep. (1891) 13; *In re Mason,* 3 id. 467; Lewin on Trusts,—13th ed.—sec. 9, p. 135.) The Thelluson act is not intended to defeat the intention of the testator as to who should be entitled to property under his will but its purpose is to prevent indefinite accumulations of wealth. Its effect is to limit the period of accumulation and to give the produce beyond the limits of the act to the per-

son or persons who would have been entitled to it if such accumulation had not been directed. The trust for accumulation beyond the limit of the time fixed by the statute only is void as to such excess, provided the trust would have been good before the act. (*French* v. *Calkins,* 252 Ill. 243; *Kolb* v. *Landes,* 277 id. 440; *Wills* v. *Southwell,* 334 id. 448.) This act does not affect the construction of the will but such construction is to be made from the four corners of the instrument as though the statute did not exist, and when the will is construed the question arises whether the act applies to the will so construed. This is but the plain intent and purpose of the act. What, then, was the purpose of the testator in providing for the sinking fund directed in the fourteenth clause of his will?

It appears in the agreed statement of facts that the testator left real estate valued at something over one million dollars and personal property of more than $164,000. The greater part of his real estate is in the business section of the city of Peoria. It will be noted that by the fourth clause of the will the trustees are directed to keep the real estate intact and may not mortgage the same during the entire period of the trust except for the purpose of securing funds to pay State inheritance and Federal estate tax. It is conceded that the latter is but a temporary purpose and in nowise enters into the questions arising on this record. By his will the testator created a perpetual trust for charity. By the ninth clause, net income, twenty per cent of which is to go to the sinking fund created by clause 14, is defined as that which remains after deducting all annuities, operating expense, ordinary expense, ordinary upkeep and ordinary repairs of every kind and nature, etc., and it is evident that he did not intend to provide by clauses other than the fourteenth for extraordinary expenses such as were there enumerated.

It will be noted that the purpose of the fund provided by clause 14 is to rcstore, replace or make major improve-

ments or additions to the buildings and improvements on said real estate. The income from the sinking fund is not to be paid back into it but is to become a part of the net income of the estate and to be used for charitable purposes as in the will provided. This clause also directs that the trustees shall use this fund from time to time as may be required or necessary. It is evident that the only purpose of establishing this sinking fund was that specified in clause 14—*i. e.,* to insure that the improved real property in the trust shall at all times produce an adequate income for the benefit of the charitable uses as in the will provided. Such purpose was to create a fund not to be accumulated but to be expended for the benefit of the estate, and not for any reason personal to beneficiaries except that the charity may receive from the property an adequate income. It seems clear that this clause is a direction concerning the management of the estate and not a provision attempting to create a gift. The testator was a successful business man who had accumulated a fortune, and it was apparent from his will that it was his judgment that twenty per cent of the net income would be necessary to keep the buildings on the premises in such a condition, "considering the location of such real estate and the best use of the same," as to insure an adequate income. He was providing for the future. His property is largely in the business district, where increases in ground values, and consequent increase in taxes, might, in the interest of good business judgment, well require major improvements or additions to the buildings on such real estate in order to insure an adequate income. It is to be particularly noted that this provision is not one for the accumulation of a fund but for the creation of a fund to be expended for judicious management of the estate. Any accumulation of that fund will necessarily be but temporary. There is nothing in the record to indicate, and no one can at this time know, what demands may be made on this fund. There is therefore no reason for saying

that the testator ordered set aside for such management an unreasonable amount. It appears clear that there can and will be no accumulation whatever except of a possible surplus in this fund after the expenditures directed have been made. Unless and until it is shown that there will be such a surplus there can be no reasonable ground for saying that an accumulation of such surplus exists or ever will exist. The fact that twenty per cent of the income is to be paid from month to month into this sinking fund does not, of itself, establish an accumulation. The interest arising from an investment of the amount of such fund on hand does not return to it but goes to the charitable purposes for which the trust is founded. The fact that the trustees are directed to expend this fund from time to time clearly indicates that there can at no time be more than a temporary accumulation.

It will be observed, here, that the purpose, made clear in clause 14, is not to erect new buildings on unimproved real estate but to restore, replace or make major improvements or additions to the buildings already on the premises. This case is on principle not unlike *In re Hibbs*, 143 Pa. St. 217, 22 Atl. 882. In that case the testator devised one-half of his property to one son in trust for another son, Spencer, with direction that the trustee receive the interest on the estate bequeathed to the brother and pay over to the latter whatever portion of it he deemed necessary and invest the balance for Spencer's benefit. In a proceeding brought by the son Spencer to terminate that provision of the will and for a decree directing the trustee to pay to him absolutely the accumulations in his hands and such as he might thereafter receive, it was urged as ground for such a decree that the will provided a trust for accumulations, contrary to the Thelluson act, which had been adopted by the State of Pennsylvania in substantially the same form as here adopted. The court, in holding that this was not an accumulation within the act, said: "The power vested in this trustee to

withhold and invest part of the income must be so construed, if possible, as to make it operative. It does not in terms or by necessary implication require permanent accumulations. As already seen, the whole income arising during the trust must be used for Spencer's benefit. In common prudence a contingent fund should be provided in the anticipation of decrease of income, sickness and the like, and the natural inference is that the discretion was vested in the trustee with this view. The accumulation was to be temporary and in the interest of judicious management. The record does not show that the amount already set apart is unreasonable in the circumstances, and we cannot assume that the trustee has abused his discretion."

We are of the opinion that the clear language of clause 14 showing its purposes, and the fact that these accumulations will be but temporary, (though, of course, the trust runs perpetually,) demonstrate not only that the clause was not designed to create accumulations, against which the Thelluson act inveighs, but in effect and in fact, so far as the facts are shown or can be shown, does not do so.

All of appellants' case is based primarily on the proposition that this will provides for an accumulation, contrary to the statute. It cannot be known until after the running of the statute whether there in fact will be, though contrary to the intent and purpose of the testator, such accumulations of surplus of this sinking fund over and above expenditures as might exist, in violation of the act. There is no reason to suppose that there will be, and for that reason appellants have no interest whatever in this estate beyond the annuities given them under the will. This disposes of appellants' chief claim, but as this is a bill to construe the will it is well to consider further the nature of this fund and the law relating to its effect on the ultimate beneficiary. This fund, as we have held, is to be created for the proper management of the trust estate, and the rule generally adopted is, that where there is an unconditional gift to charity the gift

will be regarded as immediate and given, although the particular mode of carrying out the charity which the donor has indicated is too remote, and in such a case, if a direction for accumulation is invalid, the only result is that the income is immediately distributable to the charities. The heirs or next of kin are not let in. *Ingraham* v. *Ingraham,* 169 Ill. 432; *Philadelphia* v. *Girard Heirs,* 45 Pa. St. 9; Gray's Rule Against Perpetuities, (2d ed.) sec. 678; 1 Perry on Trusts and Trustees, (6th ed.) sec. 396, and vol. 2, sec. 738.

Gifts to charity have always been looked upon with favor by the courts. Every presumption consistent with the language used will be indulged to sustain them. (*Morgan* v. *Nat. Trust Bank,* 331 Ill. 182; *Walker* v. *Central Trust and Savings Bank,* 318 id. 253; *Skinner* v. *Northern Trust Co.* 288 id. 229.) In gifts for charitable uses the law draws a clear distinction between those parts of the writing conveying them which declare the gift and its purposes and those which direct the mode of its administration. Where a vested estate is distinctly given for charitable uses and there are annexed thereto conditions, limitations, powers, trusts or other restraints relative to its use, management or disposal, any of which are not sanctioned by law, it is such restraints, and the estates limited on them, that are void and not the principal or vested estate. Unreasonable or illegal provisions for the management may be attached to the gift, but this does not annul the gift. When a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute some other mode so that the substantial intention shall not depend on the insufficiency of the formal intention. (*Ingraham* v. *Ingraham, supra; Philadelphia* v. *Girard Heirs, supra; Mason* v. *Bloomington Library Ass'n,* 237 Ill. 442.) In this case the testator's estate became immediately vested in the trustees for the use of charity, and were this sinking fund, after lapse of the time fixed by the

statute, found to have created any accumulations contrary to the act, equity would provide a lawful method of managing the estate. Certain it is that an illegal accumulation, if such existed, could not have the effect of depriving the trustees or a court of equity of the power to legally manage the estate so as to keep it in condition to earn a suitable income for the charitable purposes of the trust. Appellants can have no interest in such management or in the exercise of the equitable powers of the court pertaining to a correction of an illegality therein. It is clear from the will that its purpose is to create a charitable trust subject to the expenses of managing the property, including those provided for by clause 14, and subject to the life annuities provided in the will.

Counsel for appellants, however, argue that there is no provision made in the will for the disposition of the illegally accumulated sinking fund; that the annuitant beneficiaries are not entitled to it because they are only entitled to eighty per cent of the net income, and for the further reason that there is no residuary clause into which the illegal accumulations, after twenty-one years, could fall, and that therefore such accumulations must go to the heirs-at-law. It is a rule of law so well established as to require no citation of authority, that a testator is presumed to have intended to dispose of his entire estate by his will. The clearly expressed intention in this will is, that after the payment of debts and the decease of the testator's widow all the income from the estate not needed for ordinary repairs and other expenses enumerated in clause 9, and all other expenditures authorized and directed by clause 14, shall be paid to the charity named, subject to the interest of the life annuitants therein. It would be a violation of the testator's intention as shown within the four corners of the will, to say that should it by any chance appear after the lapse of twenty-one years that an illegal surplus existed in the sinking fund, that surplus must go to the testator's heirs-at-law. Clearly, it

was his intention that any sums not needed for the purposes of the expenditures specified shall go to the beneficiaries named to take the net income. So if it be conceded, which we do not, that an illegal surplus may arise, appellants can have no interest in the testator's estate other than their annuities, and the circuit court did not err in so holding. The chancellor also held that the beneficiaries might terminate the sinking fund provided in clause 14. By reason of the view of this court that this fund is for the purpose of the judicious management of the trust estate and must under the will continue, the chancellor was in error in so holding. (*In re Hibbs, supra.*) In all other respects the decree is right.

The decree of the circuit court is therefore affirmed in part and reversed in part and the cause is remanded, with directions to enter a decree in accordance with the foregoing opinion.

*Reversed in part and remanded, with directions.*