THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant and Cross-Appellee, *v.* GEORGE F. HARDING MUSEUM *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division)   No. 76-897

Opinion filed March 7, 1978.

William J. Scott, Attorney General, of Chicago, *pro se* (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

Albert E. Jenner, Jr., of Chicago (Jenner & Block, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is a case brought by the Attorney General of Illinois to enforce the terms of a charitable trust under the Illinois Charitable Trust Act (Act) (Ill. Rev. Stat. 1969, ch. 14, pars. 51 through 64). The trial court granted defendants' motion to strike and dismiss the complaint for failure to state a claim upon which relief may be granted (Ill. Rev. Stat. 1971, ch. 110, par. 45). The Attorney General appeals from the dismissal of the complaint. Defendants have filed a cross-appeal from that portion of the trial court's order which upheld the constitutionality of the Act. The issues on appeal are whether defendants are "trustees" within the meaning of the Act, and whether the Act is constitutional.

The portions of the Act relevant to these appeals provide as follows:

"§2. This Act applies to any trustee, as defined in Section 3, holding property of a value in excess of $4,000.

§3. 'Trustee' means any individual, group of individuals, corporation or other legal entity holding property for any charitable purpose.

§4. This Act does not apply to the United States, any State, territory or possession of the United States, the District of

Columbia, the Commonwealth of Puerto Rico, or to any of their agencies or to any governmental subdivision; or to a corporation sole, or other religious corporation, trust or organization which holds property for religious, charitable, hospital or educational purposes or for the purpose of operating cemeteries or a home or homes for the aged; nor to any agency or organization, incorporated or unincorporated, affiliated with and directly supervised by such a religious corporation or organization; or to an officer, director or trustee of any such religious corporation, trust or organization who holds property in his official capacity for like purposes; or to a charitable organization foundation, trust or corporation organized for the purpose of and engaged in the operation of schools or hospitals, or for the purpose of operating a cemetery or cemeteries or a home or homes for the aged."

The Attorney General's complaint, filed February 2, 1972, was in two counts. Count I sought an order from the court that defendants comply with the provisions of sections 6 and 7 of the Act (Ill. Rev. Stat. 1969, ch. 14, pars. 56, 57,[1] for the costs of the action, and further appropriate relief. In substance, count I alleged that: The action was brought pursuant to the Charitable Trust Act and under the common law powers of attorneys general to enforce the terms of charitable trusts. The individual defendants are the directors of the corporate defendant. The purposes of the George F. Harding Museum, the successor to the George F. Harding Collection, Inc., incorporated on September 30, 1930, are set forth in its articles of incorporation as:

"[F]or the accumulation and dissemination of knowledge and the perpetuation of knowledge of ancient arts and sciences, for the improvement of the mind by the collection, preservation and exhibition of ancient and authentic objects illustrating art, science, and history, painting, sculpture, armor, weapons, objects of art and other objects and antiques bringing to the mind activities of mankind of earlier periods of time; to found, build, maintain and operate a museum for the exhibition of the collection; to receive gifts, donations and endowments and to receive in trust property of all kinds and to exercise all necessary powers as aforesaid for such trust estates where the purpose of the trust is for the furtherance of the above objects only."

---

[1] Section 6 requires trustees subject to the Act to file with the Attorney General a copy of the instrument under which they hold property for charitable purposes within a set period of time after they receive such property.

Section 7 provides for periodic reports under oath by the trustees to the Attorney General setting forth information as to the nature of the assets held and the administration thereof by the trustees.

George F. Harding provided additional funding for the collection in his last will and testament admitted to probate on April 6, 1939.

Originally, the George F. Harding Museum was located at 4853 S. Lake Park Avenue in Chicago, and was open to the public. In January of 1965, the collection was moved to 84-86 E. Randolph. After relocating, the museum ceased to be open to the public. Since that time, it is alleged, the collection has not been used to promote the purposes set forth in the articles of incorporation. Count I further alleged that the corporate defendant is a "trustee" within the meaning of the Act, as a legal entity holding property for charitable purposes, and that defendants have failed to comply with the Act.

Count II prayed for an order temporarily restraining defendants from making any disbursement, payment, or disposition of the assets of the corporate defendant; for an accounting; for an order that the individual defendants pay to the corporate defendant any sums found owing as a result of the accounting; and, that the individual defendants be removed as corporate directors. Alternatively, count II prayed for dissolution of the corporate defendant, for distribution of the corporation's assets pursuant to the doctrine of *cy pres*, and for such further relief deemed appropriate by the court.

Defendant's answer denied the material allegations of the complaint and raised the following as affirmative defenses: that the complaint failed to state a claim for relief; that the Charitable Trust Act did not apply to the Geroge F. Harding Museum, Inc.; that the Attorney General lacked authority to bring the action; and that the Act is unconstitutional. Defendants prayed for dismissal of the complaint and costs.

Subsequently, defendants filed a motion to strike and dismiss the complaint, alleging that the Act did not apply to the Harding Museum because it did not hold property for a charitable purpose, and that the Act is unconstitutional because it creates arbitrary and discriminatory classifications for coverage.

On April 14, 1976, the trial court granted defendants' motion. The order contained general findings that the Act is constitutional, and that the Attorney General lacked authority to bring the action because defendants are not "trustees" within the meaning of the Act.

## I.

The Attorney General contends that the trial court erred when it concluded that the defendants are not "trustees" within the meaning of section 3 of the Act (Ill. Rev. Stat. 1969, ch. 14, par. 53). In so ruling, the trial court expressly relied on *Jeanne & Jerome Abeles Foundation v. Clark* (1963), 28 Ill. 2d 556, 192 N.E.2d 809. *Abeles* was a declaratory

judgment proceeding brought under the Charitable Trust Act by a number of organizations seeking a declaration that they were not trustees within the meaning of the Act. By their amended complaint, the plaintiffs also sought to have the Act declared unconstitutional. The trial court held for the plaintiffs on both issues, and both parties appealed directly to the supreme court. The supreme court refused to consider the constitutional issue because the trial court had found the Act inapplicable to the plaintiffs. The plaintiffs thus had no standing to argue that issue. (28 Ill. 2d 556, 559.) The court remanded the case to the appellate court for a review of the trial court's findings that the plaintiffs were not "trustees" as defined by the Act. (See 28 Ill. 2d 556, 560.) There is no reported appellate court decision, however. In the interim the legislature acted to include the plaintiffs within the scope of the Act's coverage. Prior to *Abeles*, the Act was applicable to:

"[A]ll trustees holding property for charitable purposes under any written trust the corpus of which has a value in excess of $4,000, and over which the Attorney General has enforcement or supervisory powers." (Ill. Rev. Stat. 1961, ch. 14, par. 52.)

The Act defined "trustee" as:

"(a) any individual, * * * corporation, or other legal entity holding property in trust pursuant to any charitable trust, (b) any corporation which has accepted property to be used for a particular charitable corporate purpose as distinguished from the general purposes of the corporation, or (c) any corporation formed or operating for the administration of a charitable trust." (Ill. Rev. Stat. 1961, ch. 14, par. 53.)

The 1963 amendment redefined "trustee" simply as:

"[A]ny individual, group of individuals, corporation or other legal entity holding property for any charitable purpose." (Ill. Rev. Stat. 1963, ch. 14, par. 53.)

*Abeles*, then, is not controlling on the issue of whether defendants are "trustees" within the meaning of the Act.

Defendants argue that they are not "trustees" because they do not hold property for "charitable" purposes. Defendants maintain that the purpose of the George F. Harding Museum is "educational," and that the Illinois General Assembly has recognized a distinction between the terms "charitable" and "educational." In making this assertion, defendants rely on section 4 of the General Not for Profit Corporation Act (Ill. Rev. Stat. 1969, ch. 32, par. 163a3) which states, in relevant part:

"Not for profit corporations may be organized under this Act for any one or more of the following or similar purposes: charitable; benevolent; eleemosynary; educational; * * * soil, crop, livestock and poultry improvement; professional, commercial, industrial or

trade association; * * * and administration and operation of property owned on a condominium basis."

During oral argument before this court, counsel stressed the significance of the fact that the legislature separated by a semicolon [2] each element of the series of purposes for which a not-for-profit corporation may be organized. The inference to be drawn from this argument is that each element of that series is conceptually exclusive of the others. Thus, it is impossible for the term "charitable" to include the term "educational." We can find no support for such an interpretation. Ordinarily, a semicolon is used to separate independent clauses of a sentence, which are closely connected in thought. However, when any of the individual elements of a series within a sentence contain one or more commas, the individual elements of the series are separated by semicolons, rather than simply by commas. (Turabian, Manual for Writers (3d rev. ed. 1967); Warriner's English Grammar & Composition (rev. ed. 1957); U. S. Government Printing Office Style Manual (1973).) In section 4, the series of purposes for which a not-for-profit corporation may be organized includes such individual elements containing commas as: "soil, livestock and poultry improvement; professional, commercial, industrial or trade association." The legislature, rather than drawing the distinction urged by counsel, was simply following the established rules of punctuation. Were it not for the fact that some of the individual elements in the series contained commas, it would have been grammatically correct to separate the terms "charitable" and "educational" by a comma. It is obvious to us that the very structure of the section illustrates the reason for the use of the semicolon.

The purpose of the Charitable Trust Act is to assist the Attorney General in carrying out his common law powers and duties to enforce charitable trusts and to see to the application of their funds to their intended charitable uses. (See Ill. Ann. Stat., ch. 14, par. 51, General Commentary, at 292 (Smith-Hurd 1963).) Prior to enactment of the Charitable Trust Act, trustees of charitable trusts had no duty to make the Attorney General aware of the existence of charitable trusts or of the manner of their operation. The Act is intended to give the Attorney General the tools with which to discharge his responsibilities. The 1963 amendments to section 3 of the Act, which redefined "trustee," were intended to bring all foundations and not-for-profit corporations "holding property for any charitable purpose" within the scope of the Act. See Ill.

---

[2] Webster defines a semicolon as "a punctuation mark; that is usu. used to separate the independent clauses of a compound sentence when the clauses are joined by no connective, when the clauses are joined by a conjunctive adverb, or when the clauses are joined by a coordinating conjunction but are long and contain internal punctuation and that is often used to separate long items in a series." Webster's Third New International Dictionary 2063 (1971).

Ann. Stat., ch. 14, par. 51, General Commentary, at 294 (Smith-Hurd 1963).

■■ It has long been the rule that a trust for the promotion of "educational" purposes may be considered to be "charitable" in nature. Scott, in his treatise on the law of trusts, states:

"Trusts for the advancement of education are charitable. In the Statute of Charitable Uses the enumeration of charitable purposes includes 'schools of learning, free schools, and scholars in universities.' * * * The cases in which trusts for the advancement of education have been upheld as charitable are numerous. [Citing, among others, *Morgan v. National Trust Bank of Charleston* (1928), 331 Ill. 182, 162 N.E. 888; *Summers v. Chicago Title & Trust Co.* (1929), 335 Ill. 564, 167 N.E. 777; and, *People ex rel. Hellyer v. Morton* (1940), 373 Ill. 72, 25 N.E.2d 504.] * * * A trust is a valid charitable trust as one for the advancement of education although it is not connected with an educational institution. Thus trusts to establish or maintain public libraries, *art museums* or botanical or zoological or similar institutions are charitable. * * * So too are trusts for the dissemination of knowledge or beliefs through the publication or distribution of books or pamphlets or the delivery of lectures." (IV Scott Law of Trusts §370, at 2866-71 (3d ed. 1967).) (Emphasis added.)

Professor Bogert, in his treatise on trusts, states:

"There is a wide difference between the popular and legal meanings of the word 'charity.' To the non-legal mind the word often means 'almsgiving,' or 'liberality to the poor,' or 'that which is given to relieve the needy'; whereas in the law the word has a much broader meaning and includes a large number of other acts working toward the social welfare." (Bogert, Law of Trusts and Trustees §369, at 62 (2d rev. ed. 1977).)

Bogert goes on to define a charitable trust:

"A charitable trust may be briefly defined as one which is for the public benefit. It is impractical to attempt to frame a definition which includes a description of all the types of activity which the courts regard as of advantage to the community. The list would be long and it would be impossible to classify many of the objects which the courts have approved. Furthermore it would be inadvisable to attempt to bind the courts by a rigid formula. They should have latitude to include new purposes as society develops and public opinion changes and to exclude objectives which have become obsolete or unsuited to prevailing conditions." Bogert §369, at 65.

The Second Restatement of the Law of Trusts defines the nature of charitable purposes in the following manner:

"A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity." Restatement (Second) of Trusts §368, comment *b*, at 248 (1959).

Comment *a* to section 370 of the Restatement lists the methods by which a charitable trust may promote education, including the establishment of "public libraries, *art museums* or other museums." (Emphasis added.) Restatement (Second) of Trusts §370, comment *a*, at 251 (1959).

The courts in Illinois are in accord in applying a broad definition of "charity":

"This court approved and adopted the following legal definition of a charity in *Crerar v. Williams*, 145 Ill. 625: 'A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burthens of government.' In *Congregational Sunday School and Publishing Society v. Board of Review*, 290 Ill. 108, it was said that charity, in a legal sense, is not confined to mere almsgiving or the relief of poverty and distress but has a wider signification, which embraces the improvement and promotion of the happiness of man. A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well doing and well being of social man." *School of Domestic Arts & Science v. Carr* (1926), 322 Ill. 562, 568-569, 153 N.E. 669.

■■■ In *Morgan v. National Trust Bank* (1928), 331 Ill. 182, 186-87, 162 N.E. 888, our supreme court stated that "[t]he test as to whether an enterprise is charitable is whether it exists to carry out a purpose recognized in law as charitable or whether it is maintained for gain, profit or private advantage. (11 Corpus Juris, 303.)" Clearly, the broad legal concept of charitable purposes embraces the corporate purpose of the George F. Harding Museum, as set forth in its articles of incorporation. There can be no question that the intent of Harding was to promote the well being of social man through the various purposes set forth in the articles of incorporation. In the establishment of this museum, the express intent of the donor was the "collection, preservation and exhibition of

ancient and authentic objects illustrating art, science, history, painting, sculpture, * * * to found, build, maintain and operate a museum for the exhibition of the collection; * * *." It is obvious that George F. Harding did not intend to distinguish between educational and charitable purposes. (See *Oasis, Midwest Center for Human Potential v. Rosewell* (1st Dist. 1977), 55 Ill. App. 3d 851, 858-59, 370 N.E.2d 1124, 1130; *People ex rel. Hellyer v. Morton* (1940), 373 Ill. 72, 77-78, 25 N.E.2d 504.) Indeed, except for the sophistical reading of the purpose clause of the articles of incorporation suggested by defendants, whose interests in this case could be adverse to the original intentions of George F. Harding, there is nothing in the record to even suggest that the George F. Harding Museum was intended to be an educational institution. For all these reasons we conclude it was error for the trial court to grant defendants' motion to dismiss the complaint.

Defendants' brief raises two other points. The first is that the complaint of the Attorney General fails to allege that the assets of the Harding Museum exceed $4,000, as required by section 2 of the Act (Ill. Rev. Stat. 1969, ch. 14, par. 52). The second point is that the individual defendants do not "hold" property within the meaning of the Act, and that therefore the dismissal of the complaint should be affirmed at least as to them. We note that these arguments were not raised in the trial court. However, counsel for the defendants stated on oral argument before this court that he could not in good faith pursue the former argument because he knew personally that the assets of the corporate defendant are worth millions of dollars. He thus commendably withdrew the argument. As to the latter point, we conclude that it has no merit.

## II.

Because we have concluded that the Act is applicable to defendants, we must consider the issue raised by the cross-appeal, namely whether the Act is constitutional. Defendants maintain that the Act is unconstitutional because it accords different treatment to those charitable trusts which operate schools, and those which do not, without a rational basis for the distinction. However, the sum and substance of defendants' argument in support of this contention is that such a classification is, on its face, "patently arbitrary." Defendants cite no case law or analysis to support this assertion.

In contrast, the Attorney General has argued that the classification is directly related to the State's interest in ensuring the enforcement of charitable trusts. This distinction recognizes that where a charitable trust benefits an identifiable segment of society, it is reasonable to believe that if the trust funds are not properly applied, the class of beneficiaries will act to inform the Attorney General. Schools benefit an identifiable

segment of society: its students, who often pay tuition. A charitable trust such as the Harding Museum does not bear this self-executing feature. Defendants have not answered the arguments of the Attorney General.

■■ Moreover, the Attorney General's position finds support in the history and purpose of the Act and in the history of the Uniform Supervision of Trustees for Charitable Purposes Act, upon which the Illinois act is based. In their Prefatory Note to the Uniform Act, the commissioners refer to an article by Professor Bogert, *Proposed Legislation Regarding State Supervision of Charities*, 52 Mich. L. Rev. 633, 633-34 (1954), for a detailed discussion of the subject covered by the Uniform Act. (7 U.L.A. 820 (1970).) In the first paragraphs of that article, Professor Bogert poses the problem to be resolved:

> "In the case of private trusts the dangers of long continued neglect or other breaches are not great. Definite or ascertainable persons have a financial interest in enforcement and can bring suit against the trustee. The beneficiaries are almost inevitably informed of their status soon after the creation of the trust. It is the duty of the trustee to notify them of the trust creation, and court notices, the receipt of benefits, and other incidents of trust administration bring home to the beneficiaries knowledge of their situations. Court accountings or voluntary reports generally keep the cestuis informed as to the trustee's work. Usually the beneficiaries know their rights and show some diligence in asserting them. Most private trusts are of relatively short duration, so that knowledge of their existence is not apt to be destroyed by the vicissitudes of human life, including the deaths of trust personnel.
>
> On the other hand in the case of charitable trusts there are usually no private persons who are the equitable owners of the trust property and who can take the lead in suits for enforcement. While the courts often talk of individuals who are to get charitable benefits as 'beneficiaries,' strictly speaking the state is the only party having a legal interest in enforcement, and the human beings who are favorably affected by the execution of the trust are merely the media through whom the social advantages flow to the public. If a trust has as its object the care of the poor, those persons who are chosen to secure the necessities of life under it are not in reality beneficiaries of the trust but only the instrumentalities through which the state receives the social advantage of seeing that its citizens do not suffer want. That this is true is shown by the rule that only the attorney general of the state can sue for enforcement, since he is the legal officer whose duty it is to represent the interests of the state and its citizens."

(See also L. Kutner and H. Koven, *Charitable Trust Legislation in the Several States*, 61 Nw. U. L. Rev. 411 (1966).) The Illinois act, exempting charitable trusts which operate schools, is merely a recognition that charitable trusts for the operation of schools bear self-executing characteristics, whereas charitable trusts which generally promote "education" do not. It is obvious the purpose of the Act is to provide some method of reporting for those trusts whose assets have been devoted to the public use. In our opinion the statute applies uniformly to those types of trusts and is not "patently arbitrary."

Defendants' bare assertion that the classification created by the Act is "patently arbitrary" is not supported by any persuasive arguments. Defendants thus have failed to fulfill their burden of persuasion as the appellants in the cross-appeal before this court.

Accordingly, the circuit court of Cook County's judgment that the Act is constitutional is affirmed. The circuit court's judgment that the Act is inapplicable to defendants is reversed.

Affirmed in part; reversed in part.

STAMOS, P. J., and PERLIN, J., concur.