THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant, *v.* HERMAN M. SILVERSTEIN *et al.*, Defendants-Appellees.

First District (1st Division) No. 80-259

Opinion filed July 7, 1980.—Rehearing denied August 4, 1980.

William J. Scott, Attorney General, of Chicago (Donald G. Mulack and George H. Klumpner, Assistant Attorneys General, of counsel), for appellant.

Albert E. Jenner, Jr., Donald R. Harris, and Robert F. Reklaitis, all of Jenner & Block, of Chicago, for appellee The George F. Harding Museum.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

People of the State of Illinois (plaintiff) appeal from an order denying plaintiff's motion for a hearing concerning the appointment of a receiver for The George F. Harding Museum, an Illinois not-for-profit corporation (Museum). (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a).) Other litigation involving this Museum was before this court in *People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 374 N.E.2d 756.

Plaintiff's verified complaint now before us alleged the Museum, "given to the public for its appreciation and enjoyment," was being mismanaged by its directors in breach of their fiduciary duties. The complaint charged the directors failed to display Museum artifacts to the public in violation of the Museum's corporate charter, mismanaged Museum assets by purchasing investment real estate, consistently operated the Museum at a deficit, awarded each other excessive salaries, and secretly sold a painting from the Museum collection. The complaint also specifically charged Herman M. Silverstein, a director and president of the Museum, was engaged in self-dealing in that the Museum borrowed money from a bank in which Silverstein had a 35.1-percent ownership of voting power. See Ill. Rev. Stat. 1975, ch. 32, par. 163a4.1.

The complaint further alleged the Museum artifacts were deteriorating because of mismanagement. On order of the directors, some of the artifacts were to be secretly sold at auction. Plaintiff sought a restraining order and preliminary injunction to prevent the Museum and its directors from selling any assets of the Museum, the appointment of a receiver to conduct an inventory and appraisal of the artifacts and assets, an accounting by defendants of all assets, a constructive trust for monies wrongfully obtained by the directors from the Museum, and removal of the directors from their positions.

A synopsis of the lengthy litigation is essential to consider fully the propriety of the order before us. The voluminous trial record indicates a preliminary injunction was entered on December 20, 1976, enjoining defendants from selling any assets of the Museum. Before that time, some of the Museum's assets had been shipped to Southeby Parke Bernet, Inc., in New York City for sale at auction. Southeby sold a painting and 48 musical instruments at two auctions, one of which occurred before the filing of the instant action and the other after a temporary restraining order had been issued by the trial court directing the proceeds from that sale be deposited into a Chicago bank. The proceeds of both these sales, $253,900, were deposited in a bank and later disbursed to Southeby and

the Museum. The property shipped to Southeby but not sold due to the preliminary injunction remains in storage in New York.

The Museum filed an answer on January 20, 1977, verified by Herman Silverstein, its president. The answer denied the material allegations of plaintiff's complaint. During the course of discovery, the Museum filed an inventory of assets with the trial court. The trial court ordered three art appraisal experts to inspect the Museum's collection and report on its condition. Apparently two of the experts filed item-by-item reports with the court. These appraisal reports are not part of the record before us. The third expert died before he could make appraisal reports to the trial court of the items awaiting his examination.

We can only surmise from reference to the appraisal reports by the parties and the trial court that only a few of the appraised items were in a condition "inconsistent with average conditions of museums of comparable size, budget and staffing." However, many of the artifacts were not appraised because of the death of the third expert.

Discovery progressed slowly. The trial court threatened to impose sanctions on some defendants for failure to comply with requests for documents or depositions. Finally, trial was set for December 3, 1979. However, prior to that date, George Otlewis, one of the director-defendants, subpoenaed William Currie, a reporter who had been covering this case for his newspaper, for deposition. Currie moved to quash the subpoena. The trial court denied his motion and ordered his deposition to proceed. This order was stayed pending appeal by Currie. The appeal is presently docketed in this court. The trial court delayed trial of this cause due to the refusal of Otlewis to go to trial without Currie's deposition.

On November 30, 1979, plaintiff filed a verified motion for "an immediate hearing" concerning the appointment of a receiver. Plaintiff alleged a comparison of the verified inventory of the Museum collection, filed herein in March 1977 pursuant to court order, with an inventory taken in 1964 revealed approximately 80 items are missing and not accounted for by way of known sales or otherwise. The directors of the Museum have refused to appear for depositions to account for these losses.

Plaintiff alleged the financial statements for the Museum reveal consistent losses of $200,000 to $300,000 per year on an annual budget of $500,000. The Museum has borrowed money commencing before 1970 to meet its cash shortages. Its liability in this regard has escalated annually. At the time the complaint was filed the Museum was $845,000 in debt. By 1979, the liability was $1,775,000 evidenced by a note dated August 23, 1979, and due on December 31, 1979, copy of which was attached to the motion. The interest on this note is "1% above prime, floating" which

plaintiff indicated was then 15 to 16 percent or approximately $266,250 annually. Some of the interest was paid to a bank in which one of the trustees, Herman Silverstein, had a personal financial interest.

The motion further stated the Museum did not have approximately $2200 to pay appraisers' fees and expenses to re-examine the objects previously shipped to New York for auction. The motion alleged the right of the People of Illinois to the use and enjoyment of the Museum was "being frustrated by the depletion, waste and mismanagement of Museum art objects and finances * * *." The motion prayed an immediate hearing and an order appointing a receiver, without bond, to take control of the Museum.

The Museum filed an unverified answer to plaintiff's motion. The answer alleged plaintiff previously filed motion for appointment of a receiver in December 1976. This moton was denied December 20, 1976. A similar motion was filed on April 4, 1977, and abandoned. The answer also alleged no bond was tendered by plaintiff; the motion failed to show plaintiff would ultimately prevail on the merits and the allegations of the motion did not sufficiently show the property of the Museum was in imminent danger of dissipation. However, the allegations of plaintiff's motion were not specifically denied.

Plaintiff filed a response to the Museum's answer. Plaintiff alleged the Museum has failed to deny the statements made in plaintiff's motion. Plaintiff alleged no written motion for appointment of a receiver was previously made. Neither a written nor an oral motion for appointment of a receiver was made in connection with the order entered herein on April 4, 1977, and said order did not pass upon appointment of a receiver. The response averred the issue of a bond was irrelevant until after the trial court had conducted a hearing on the appointment of a receiver. The response pointed out the failure of the Museum's answer to deny the allegations of plaintiff's motion to the effect that the Museum will have doubled its indebtedness from 1976 to 1979 and had incurred financial losses for 13 consecutive years. The response set out a comparison between the verified complaint and verified motion for appointment of a receiver will show plaintiff "will likely prevail on the merits * * *" after trial.

On December 26, 1979, the trial court heard argument of counsel and denied plaintiff's motion to set a hearing on the appointment of a receiver and also denied plaintiff's motion for appointment of a receiver.

In this court, plaintiff contends the motion for appointment of a receiver was legally sufficient to justify such action. Alternatively, plaintiff argues the trial court should have held an evidentiary hearing to allow plaintiff an opportunity to prove the allegations of the verified motion. The Museum contends simply that the trial court did not abuse its

discretion in denying plaintiff's motion which is defective as a matter of law.

In *Bagdonas v. Liberty Land & Investment Co.* (1923), 309 Ill. 103, 110, 140 N.E. 49, our supreme court held:

"Application for the appointment of a receiver is addressed to the sound legal discretion of the court. It is a high and extraordinary remedy. The power is not arbitrary and should be exercised with caution and only where the court is satisfied there is imminent danger of loss if it is not exercised. The general rule is that the applicant must show, first, that he has a clear right to the property itself or has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim; and second, that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct or insolvency."

This rule has been followed in many cases since *Bagdonas*. (See, for example, *Poulakidas v. Charalidis* (1979), 68 Ill. App. 3d 610, 613-14, 386 N.E.2d 405, *appeal denied* (1979), 75 Ill. 2d 594; *Steinwart v. Susman* (1968), 94 Ill. App. 2d 471, 475-76, 238 N.E.2d 200; *Simpson v. Adkins* (1941), 311 Ill. App. 543, 552, 37 N.E.2d 355.) In addition, this court has stated the appointment of a receiver *pendente lite* is warranted only when "there is no other adequate remedy or means of accomplishing the desired result, and there should be a reasonable probability that plaintiff will ultimately prevail in the suit." *Fox v. Fox Valley Trotting Club, Inc.* (1953), 349 Ill. App. 132, 137, 110 N.E.2d 84; *Simpson*, 311 Ill. App. 543, 552.

In the instant case, plaintiff's motion asserts the People of Illinois, as plaintiffs, "have a clear right to the use and enjoyment of the Museum assets pursuant to the museum charter and Illinois law." It is evident plaintiff's motion meets the first part of the above quoted test in *Bagdonas*. The Museum is operated through a charitable trust and its corporate purpose is "the accumulation and dissemination of knowledge and the perpetuation of knowledge of ancient arts and sciences * * *." (*Harding Museum*, 58 Ill. App. 3d 408, 410, 416.) As such, under the Charitable Trust Act, the Attorney General can institute appropriate proceedings to secure the proper administration of this charitable trust of which plaintiff is the beneficiary. (See Ill. Rev. Stat. 1977, ch. 14, par. 62.) Thus, if it should be proved upon full hearing that the charges in plaintiff's motion are true, plaintiff would have "a clear right to the property itself * * *." *Bagdonas*, 309 Ill. 103, 110.

■■ The second part of the test enunciated in *Bagdonas*, as it relates to the

instant cause, is that plaintiff show "the property itself * * * is in danger of loss from neglect, waste, misconduct or insolvency." To support such a showing, the petition for the appointment of a receiver "must set forth specific facts and must not contain mere legal conclusions of the pleader." *Cohen v. Financial Acceptance Co.* (1965), 56 Ill. App. 2d 359, 363-64, 206 N.E.2d 308.

■■ In plaintiff's verified motion, allegations are made as to 80 missing Museum items and the increasing debt of the Museum. The motion further alleges the Museum does not have $2200 to pay appraisers' fees. This is despite the existence of a $1,775,000 outstanding loan (as evidenced by the bank note attached to the motion) and despite the fact that most of the $253,900, which was obtained from the two sales of Museum assets, was disbursed to the Museum in November 1977. Furthermore, there is an allegation that some of the interest on the outstanding loan has been paid to a bank in which Herman Silverstein, one of the trustees, had a financial interest. These allegations, if shown to be true upon full hearing, could indicate a danger of loss of Museum assets due to neglect, waste, misconduct or insolvency which would warrant the appointment of a receiver.

The trial court denied plaintiff's motion without an evidentiary hearing to explore fully the financial status of the Museum and the matter of 80 missing pieces from the Museum collection. Also, plaintiff did not have an opportunity to show the lack of another adequate remedy or the reasonable probability of prevailing in the suit. Similarly defendants had no opportunity to present their side of the case.

It is correct, as defendants urge, that the appointment of a receiver is a matter for the exercise of sound discretion by the trial judge. In *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 123, 277 N.E.2d 844, the court held:

> "The appointing of a receiver is an exercise of equity jurisdiction and rests largely in the discretion of the appointing court, the object being to secure and preserve the property for the benefit of all concerned so that it might be subjected to such order as a court might render."　.

However, we do not have before us at this point any determination regarding the appointment of a receiver. The only issue to be decided by this court is whether the able trial court should have conducted a hearing in which he, in his sound discretion, would determine the necessity and propriety of appointment of a receiver.

On the issue of the necessity of posting of bond by plaintiff, the pertinent statute provides (Ill. Rev. Stat. 1977, ch. 110, par. 407):

> "§ 1. That before any receiver shall be appointed the party making the application shall give bond to the adverse party in such

penalty as the court or judge may order and with security to be approved by the court or judge conditioned to pay all damages including reasonable attorneys fees sustained by reason of the appointment and acts of such receiver, in case the appointment of such receiver is revoked or set aside; provided, that bond need not be required, when for good cause shown, and upon notice and full hearing, the court is of opinion that a receiver ought to be appointed without such bond."

Thus, the matter of a bond requirement need not be considered unless and until the trial court determines appointment of a receiver is an appropriate remedy.

It is our considered opinion that the situation before us as above set forth requires a full evidentiary hearing be held by the trial court on the merits of the issue of appointment of a receiver.

We deem it essential for us to stress the fact that we do not intend by any word or statement herein to express any opinion whatsoever upon the issue of the appointment of a receiver. We have neither the legal right nor the desire to take any stand upon that issue which is not presently before us. Our opinion is limited strictly to the result reached; namely, that the trial court should conduct a hearing.

The original complaint in this case was filed in the trial court on October 28, 1976. Very little progress toward final disposition of the matter has been made since that date. It seems to us that the Attorney General should be anxious for trial to determine the validity of the claim made. In our opinion a decision on the merits of plaintiff's claim is crucial to accomplishment of the object of the charitable trust here involved. Similarly, the defendants should be equally anxious to obtain a vindication for their stewardship of a public trust. We therefore direct that the hearing upon plaintiff's motion for appointment of a receiver be expeditiously held.

The order denying a hearing on the question of appointment of a receiver is reversed and the cause is remanded with directions that the trial court proceed promptly to conduct such a hearing.

Reversed and remanded.

McGLOON and CAMPBELL, JJ., concur.