THIRD DIVISION
February 10, 2010

No. 1-09-1481

| | | |
|---|---|---|
| CENTERPOINT PROPERTIES TRUST, a Maryland Real Estate Investment Trust, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| OLDE PRAIRIE BLOCK OWNER, LLC., an Illinois Limited Liability Company; *et al.*, | ) ) ) | Honorable Mathias William Delort, |
| Defendant-Appellant. | ) ) | Judge Presiding. |
| (Metropolitan Pier and Exposition Authority, a Municipal Corporation; Midland Multi-Family Equity Reit; Jerry Iseberg a/k/a Jerrol Iseberg; Karl S. Norberg; City of Chicago, a Municipal Corporation; Maria Pappas, Treasurer and Collector of Cook County, David Orr, Cook County Clerk; Lake Side Parking, Inc., an Illinois Corporation; Divane Bros. Electric Co., a Delaware Corporation; Lakeside Place Owner, LLC, an Illinois Limited Liability Company; Lakeside Place, LLC, a Maine Limited Liability Company; Olde Prairie Avenue LLC, an Illinois Limited Liability Company; Olde Prairie Owner, LLC, an Illinois Limited Liability Company; Pamela W. Gleichman; Unknown Occupants; Unknown Owners; and Non-Record Claimants, Defendants). | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

JUSTICE QUINN delivered the opinion of the court:

1-09-1481

Defendant, Olde Prairie Block Owner, LLC (OPBO), appeals from an order of the trial court denying its motion to stay enforcement of the court's previous order appointing a receiver in the mortgage foreclosure proceeding brought by plaintiff, CenterPoint Properties Trust (CPPT). On appeal, defendant contends that it has established good cause why it should remain in possession of the property pursuant to section 15-1701(b)(2) of the Illinois Mortgage Foreclosure Law (the Act) (735 ILCS 5/15-1701(b)(2) (West 2004)) and that the trial court erred in refusing to hold an evidentiary hearing before appointing a receiver. For the reasons set forth below, we affirm the trial court.

## I. BACKGROUND

On or about February 22, 2008, CPPT made a one-year term loan to OPBO in the amount of $32,127,667.03, which was evidenced by a promissory note and secured by a mortgage. The property that is encumbered by the mortgage was purchased by real estate developer Pamela Gleichman and her family through OPBO in 1997, for the purposes of retail and hotel development. It consists of a fee estate and a leasehold estate. The fee estate includes two parcels of nonresidential property: 230 East Cermak Road, in Chicago Illinois, which is referred to as "Olde Prairie Block," and 330 East Cermak Road, which is referred to as "Lakeside Place." Olde Prairie Block is 53,635 square feet and is improved with a 2-story, 50,568-square-foot building that is currently leased by OPBO to Lakeside Parking for use as a parking garage. In addition, offices in the building are leased to Divane Bros. Electric Company. Olde Prairie Block is the subject of a condemnation lawsuit brought by the Metropolitan Pier and Exposition Authority (MPEA), which names both OPBO and CPPT as defendants and is currently pending

-2-

in the circuit court of Cook County.[1]  Lakeside Place is a 159,960-square-foot block containing a nonleased vacant building.  The leasehold estate consists of an interest in parking spaces on the Lakeside Place property that are currently leased by the MPEA to OPBO.

The promissory note executed by OPBO matured on February 21, 2009, and when the amount due was not timely paid, CPPT filed a complaint in the circuit court of Cook County on February 29, 2009, to foreclose the mortgage.  Subsequently, on March 26, 2009, CPPT filed a motion for the appointment of a receiver, relying on section 15-1704(a) of the Act, which provides, in part, that "upon request of any party and a showing of good cause, the court shall appoint a receiver for the mortgaged real estate" (735 ILCS 5/15-1704(a) (West 2004)), and section 15-1702(a), which provides that "[w]henever a mortgagee entitled to possession so requests, the court shall appoint a receiver"  (735 ILCS 5/15-1702(a) (West 2004)).

On May 14, 2009, defendant filed a response to CPPT's motion for the appointment of a receiver, arguing that a receiver would improperly interfere with the condemnation case and jeopardize any future refinancing of the mortgage.  Shortly after filing its response and one day prior to the hearing on plaintiff's motion to appoint a receiver, defendant filed its answer to the complaint and a two-count counterclaim.  Count I of the counterclaim asserted that the mortgage and note should be rescinded because they were entered into under economic duress. Specifically, OPBO alleged that CPPT made material changes to the terms of the loan agreement just days before the closing date and after OPBO had ceased looking for another potential lender, and therefore, OPBO had no choice but to accept the new terms or face the loss of the property to

---

[1] Case No. 08 L 50636.

the lender that was being replaced. Count II of the counterclaim asserted that CPPT's conduct in the loan transaction violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*. (West 2004)). CPPT filed a motion to dismiss the counterclaim, which the trial court granted on September 23, 2009, with leave to amend.

On May 29, 2009, after a hearing, the trial court granted CPPT's motion for the appointment of a receiver. On June 16, 2009, OPBO filed a motion to stay enforcement of that order pending interlocutory appeal. In its motion, OPBO argued that a stay is necessary because the presence of a receiver decreases the likelihood of securing financing to pay off the CPPT mortgage and negatively impacts the prospective development of the property. OPBO submitted affidavits from Luke Sauer, a principal in Sierra Realty Advisor, a commercial real estate firm retained by OPBO to locate prospective tenants for the property; Judy Thornber, an employee of Olde Prairie Partners, LLC, an OPBO affiliate; and Pamela Gleichman, asserting that the appointment of a receiver will hinder efforts by the real estate developer to find prospective tenants, investors and lenders for property that is in the project development stage, as in this case. After a hearing on July 13, 2009, the trial court denied OPBO's motion to stay enforcement of the order appointing a receiver and its request for an evidentiary hearing, and OPBO timely filed this interlocutory appeal.

While this appeal was pending, the receiver filed an interim report dated September 16, 2009, which was included in the supplemental record on appeal. That report states, in part, that in March 2008, OPBO, by verbal agreement with the parking garage operator, reduced the rent for Lakeside Parking from $10,000 to $5,000 per month. The receiver obtained two alternative

arrangements for the management of the parking garage that would result in an increase in revenue compared with the current operation. Further, the receiver discovered that several invoices were outstanding, the first installment of 2008 real estate taxes payable in 2009 was not paid, and the liability insurance coverage on the property was $2 million less than the coverage required by the mortgage. With regard to the condition of the buildings on the property, a visual inspection disclosed asbestos, lead paint, water infiltration problems and the presence of mold. Openings in the roof were temporarily secured and windows boarded up to limit vagrant access.

## II. ANALYSIS

This appeal presents two issues: whether the trial court erred in appointing a receiver for the subject property and whether the trial court should have granted defendant's request for an evidentiary hearing. The first issue is governed by the Illinois Mortgage Foreclosure Law. Prior to the enactment of the Illinois Mortgage Foreclosure Law and consistent with judicial review of injunctive relief generally, Illinois statutory provisions relating to mortgage foreclosures granted a court discretion to award a mortgagee possession during the pendency of the foreclosure proceedings. However, the Illinois Mortgage Foreclosure Law, enacted in 1987, employs mandatory language and drastically curtails a trial court's discretion in deciding motions to appoint a receiver. Mellon Bank, N.A. v. Midwest Bank & Trust Co., 265 Ill. App. 3d 859, 867 (1993). Section 15-1701(b)(2) of the Act provides that in mortgage foreclosure cases involving nonresidential real estate, a mortgagee is entitled to be placed in possession of the property prior to the entry of a judgment of foreclosure upon request, provided that the mortgagee shows (1) that the mortgage or other written instrument authorizes such possession and (2) that there is a

reasonable probability that the mortgagee will prevail on a final hearing of the cause. However, if the mortgagor objects and demonstrates "good cause," the court shall allow the mortgagor to remain in possession. 735 ILCS 5/15-1701(b)(2) (West 2004).

Section 15-1702(a) of the Act provides that "[w]henever a mortgagee entitled to possession so requests, the court *shall* appoint a receiver" (emphasis added) (735 ILCS 5/15-1702(a) (West 2004)) and according to section 15-1105 of the Act, "shall" means "mandatory and not permissive." (735 ILCS 5/15-1105(b) (West 2004)). Therefore, as this court has previously held, the Act creates a presumption in favor of the mortgagee's right to possession of nonresidential property during the pendency of a mortgage foreclosure proceeding (Travelers Insurance Co. v. La Salle National Bank, 200 Ill. App. 3d 139, 143 (1990); Mellon Bank, 265 Ill. App. 3d at 866-67 (1993)), and a mortgagor can retain possession only if it can show "good cause" for permitting it to do so. In addition, this court has held that the Act changed the standard of review from a deferential standard to a *de novo* standard of review. Mellon, 265 Ill. App. 3d at 868. With this in mind, we consider whether the trial court properly granted CPPT's motion to appoint a receiver.

At the outset, we note that the parties agree that CPPT has satisfied the two requirements entitling it to possession. First, CPPT is authorized by the terms of the mortgage to take possession of the property in the event of a default. Namely, section 3.2(e) of the mortgage states that "Upon the occurrence of any Event of Default, Lender shall be entitled, as a matter of absolute right and without regard to the value or condition of any security for the amount due or the solvency of any person liable therefore, to the appointment of a receiver for the Property upon

ex parte application to any court of competent jurisdiction." Second, because a proven default establishes a reasonable probability of success in a mortgage foreclosure action (Brown County State Bank v. Kendrick, 140 Ill. App. 3d 538, 541 (1986), citing Olympic Federal v. Witney Development Co, Inc., 113 Ill. App. 3d 981, 986 (1983)) and OPBO has admittedly defaulted on its note, there is a "reasonable probability" that CPPT will prevail on a final hearing in this case. Therefore, CPPT is entitled to possession of the property and the appointment of a receiver unless OPBO can establish good cause for permitting it to retain possession. The trial court found that OPBO failed to sustain its burden in this regard. We agree.

Defendant contends that the issue of what constitutes good cause under section 15-1701(b)(2) of the Act is one of first impression. Although defendant acknowledges that this court has previously addressed good cause in the context of a mortgage foreclosure involving nonresidential property, defendant asserts that those cases addressed what does not constitute good cause rather than delineating what would constitute good cause. For instance, in Travelers, defendants executed a mortgage in favor of the plaintiff to secure a promissory note for $15,500,000. Travelers, 200 Ill. App. 3d at 140-41. The mortgaged property included an office building that generated monthly rental income of approximately $150,000. Travelers, 200 Ill. App. 3d at 141. After defendant defaulted on the loan and the plaintiff filed a mortgage foreclosure complaint, the parties entered into an agreement, pursuant to which defendants would deposit rents produced by the mortgaged property into a checking account held jointly with plaintiff and submit to plaintiff a monthly schedule identifying proceeds and operating expenses. Travelers, 200 Ill. App. 3d at 141. After the trial court approved the agreement and entered an

agreed order incorporating its terms, the plaintiff decided to file a motion to obtain possession, which the trial court granted after finding that the mortgage authorized possession and that the plaintiff was likely to prevail on the merits of the foreclosure complaint. Travelers, 200 Ill. App. 3d at 141.

On appeal, defendants contended that they demonstrated the statutorily required good cause to retain possession because plaintiff failed to allege any fraud, mismanagement, waste or other dissipation of the mortgaged real estate. This court rejected that argument, finding it was "nothing more than defendants' attempt to shift the burden of making a good cause showing onto plaintiff," which, as a nonresidential mortgagee, "had no obligation to allege misdeeds or omissions on the part of the mortgagors in order to be placed in possession." Travelers, 200 Ill. App. 3d at 144. This court also rejected defendants' argument that the agreement between the parties afforded adequate protection to plaintiff's interest in the mortgaged property, stating that "whether the mortgagee is 'adequately protected' is not a relevant consideration under the statute." Travelers, 200 Ill. App. 3d at 144. Therefore, because the defendants failed to demonstrate good cause to overcome the statutory presumption in favor of the mortgagee, this court affirmed the trial court's decision to put plaintiff in possession of the property. Travelers, 200 Ill. App. 3d at 146.

In Mellon Bank, the mortgagee appealed from an order of the trial court denying its motion to appoint a receiver to manage the mortgaged property, a high-rise apartment complex in Chicago. Mellon Bank, 265 Ill. App. 3d at 861. To establish good cause for permitting it to retain possession, the mortgagor asserted that (1) the mortgage lacked consideration, (2) the

mortgagee induced the mortgagor to enter into the mortgage using "maneuvers and sham transactions," and (3) the mortgagee previously accepted late payments and, therefore, was estopped from foreclosing. Mellon, 265 Ill. App. 3d at 869. In reversing the trial court, this court found that defendant's " 'good cause' arguments fail entirely." Mellon, 265 Ill. App. 3d at 872. First, this court found the mortgagor's attempts to portray the mortgagee as an unscrupulous bank taking advantage of an unsophisticated owner unconvincing because the mortgage was executed by sophisticated businessmen who were represented by a prominent law firm. Mellon, 265 Ill. App. 3d at 870. This court also rejected the mortgagor's argument that there was no consideration, noting that the mortgage was executed in exchange for the mortgagee agreeing to increase its letter of credit. Mellon, 265 Ill. App. 3d at 871. Lastly, this court found that the mortgagee's previous acceptance of late payments did not prohibit it from ever seeking to foreclose the mortgage. Mellon, 265 Ill. App. 3d at 872.

Defendant contends that Travelers and Mellon turn on the fact that the allegations made by the mortgagor impermissibly shifted the burden of showing good cause to the mortgagee and were factually false, rather than on a definitive finding that the evidence presented by the mortgagor failed to establish good cause. Defendant asserts that federal district courts in Illinois have also failed to clearly define good cause under the Act, but contends that opinions issued by those courts contain "common threads" from which to derive a good cause standard. Relying on eight unpublished federal district court cases, which, like unpublished Rule 23 orders (166 Ill. R. 23(c)) issued by this court, generally may not be cited (Fed. Rule App. P. 32.1 (prohibiting the citation of nonprecedential orders issued before January 1, 2007)), defendant suggests that this

court find that a mortgagor can establish good cause by showing that (1) it can manage the property with greater efficiency than a receiver or (2) the harm caused to the mortgagor by appointing a receiver outweighs any potential harm to the mortgagee. Alternatively, defendant asserts that this court can more narrowly decide this case by holding that where mortgaged property is vacant and suitable for development only, the mortgagor should be entitled to a presumption that good cause exists to allow it to remain in possession. We will first address the proposed good-cause standard proffered by defendant and then consider whether application of the statutory presumption in favor of mortgagees of nonresidential property should depend on the condition of the property.

Although defendant asserts that a showing by the mortgagor that it can more efficiently manage the property than the mortgagee establishes good cause, the federal district reached a different conclusion in a case analogous to this case, Home Life Insurance Co. v. American National Bank & Trust Co., 777 F. Supp. 629 (N.D. Ill. 1991). In Home Life, the defendant argued, as OPBO does here, that there was good cause for not appointing a receiver because there was no more qualified manager for the property than the current manager and negotiations with prospective tenants would be jeopardized by the appointment of a receiver. The district court rejected that argument, stating that "the qualifications of current property management are not an important consideration under the [Act] when the property is in default." Home Life, 777 F. Supp. at 632. "Such a requirement would be tantamount to shifting the burden of showing good cause onto the mortgagee." Home Life, 777 F. Supp. at 632, citing Travelers, 200 Ill. App. 3d at 44.

Defendant contends, however, that Home Life only stands for the assertion that a mortgagor's unsupported claims that it is better able to safeguard the value of the property and secure new tenants than a receiver does not constitute good cause, and that because it has supported such claims, it has shown good cause. We disagree. First, Home Life, although not binding on this court, is persuasive authority (see Zahl v. Krupa, 365 Ill. App. 3d 653, 662 (2006) (on matters of state law, federal cases are not binding on Illinois courts, but can act as persuasive authority)) and states that the qualifications of the current property manager are irrelevant to a showing of good cause when the property is in default. Therefore, a showing by OPBO that it could better manage the property would not be sufficient to overcome the statutory presumption in favor of appointing a receiver.

Moreover, even if we were to agree with defendant's assertion that a mortgagor can establish good cause by showing that it rather than the receiver is better able to manage the property, OPBO has presented no such evidence in this case. The receiver's interim report, which states that invoices and real estate taxes on the property were not paid, rent collection was not maximized, the amount of insurance was inadequate, and repairs needed to prevent water infiltration and vagrant access were not made, belies defendant's assertion that it can better manage the property.

Defendant's second contention is that it has established good cause by showing that the harm to OPBO caused by the appointment of a receiver outweighs any harm CPPT might incur if OPBO is permitted to retain possession. Defendant asserts that the appointment of a receiver makes it difficult to attract prospective tenants, promote projects to investors, and obtain

-11-

financing in order to resolve the foreclosure action. Conversely, defendant asserts, there is no harm to plaintiff if defendant maintains possession of the property because it is effectively vacant, there is no significant rent stream or commercial business, and the receiver has continued to use the same police officer hired by defendant, as a security officer for the property. We disagree.

While we do not dispute defendant's assertion that the appointment of a receiver likely imposes additional procedural hurdles for defendant in its efforts to develop, refinance or sell the property, we do not find that such potential impediments are sufficient to overcome the statutory presumption in favor of placing the mortgagee in possession. In nearly every foreclosure case involving nonresidential property the appointment of a receiver will likely create some impediments for a mortgagor that wants to sell, refinance or develop the property. If we were to hold that a mortgagor can establish good cause simply by showing that a receiver will make it more difficult to attract investors, lenders or buyers, it is likely that the exception would swallow the rule. However, we can conceive of circumstances in which a court could find that good cause has been established by a mortgagor in a situation similar to the one faced by the defendant in this case. For instance, if while a motion for the appointment of a receiver is under consideration, the mortgagor presents evidence to the trial court that it has a commitment from an investor to provide funds for development of the property or it has obtained a loan from another lender to refinance and that the appointment of a receiver would likely impede those transactions, the trial court may find that there is good cause to permit the mortgagor to retain possession in the interim. It is likely, however, that a court would find that the transaction must be imminent

and not merely a possibility at some unknown time in the future. See, e.g., Home Life, 777 F. Supp. at 632. ("[t]he mere possibility of existing lease negotiations does not overcome the statutory presumption in favor of the appointment of a receiver").

That is not the situation in the instant case. OPBO has stated that it wants to develop the property, but has no imminent plans to do so and cannot, with any reasonable certainty, predict when such development will take place. CPPT made a short-term loan to OPBO so that it could obtain long-term financing for development of the property, but OPBO has presented no evidence showing that it has a commitment from a lender to refinance the loan. CPPT cannot be expected to wait indefinitely while OPBO attempts to obtain the investors and the financing needed to move forward with its plans for the property, particularly in light of the statutory presumption in favor of the mortgagee's right to possession in foreclosure proceedings involving nonresidential property.

We also disagree with defendant's assertion that CPPT will not be harmed if OPBO is permitted to retain possession of the property. The record shows that prior to the appointment of the receiver, OPBO, without notifying CPPT as required by the mortgage, turned management of the property over to Stanford Management, LLC, a company based in Portland, Maine, that does not appear to have any commercial management experience or be registered with the Illinois Secretary of State to do business in this state. Further, despite defendant's assertion that it was maintaining and protecting the property, the receiver's interim report indicates that invoices and real estate taxes were not timely paid, insurance was inadequate, rent collection was not maximized, and necessary maintenance to the buildings was ignored.

1-09-1481

Defendant seems to minimize the importance of the steps taken by the receiver, stating in its brief that "the determination of whether the property is better 'managed' by mortgagors than by the receiver is somewhat of a red herring" because the property is primarily suited for future development and therefore needs a real estate developer rather than a manager. In essence, defendant asserts that because the buildings on the property will likely be torn down when future development is undertaken, efforts to abate water infiltration and mold problems and to secure the building by boarding up the roof and windows are largely unnecessary. We disagree. Although the repairs undertaken by the receiver may not increase the value of the property or the likelihood of attracting investors or lenders, efforts to secure the building and prevent further structural damage are necessary to ensure that they do not pose a danger to the general public. Abandoned buildings that are easily accessible are likely to increase vagrant traffic in the area and, if allowed to fall into disrepair, may collapse, partially or completely, injuring people or structures in the vicinity. Such concerns were addressed by the Chicago city council when, in 2008, it adopted section 13-12-125 (Vacant Buildings Ordinance) of the Chicago Municipal Code (Chicago Municipal Code §13-12-125 (2008)), which provides, in part, that owners of vacant buildings must enclose and secure those buildings pursuant to the requirements of section 13-12-135 (minimum requirements for vacant buildings) of the Code (Chicago Municipal Code §13-12-135 (2008)). Therefore, both the city and local residents have an interest in seeing that necessary repairs are made. Further, by ensuring that the buildings are properly secured, the receiver has also protected the interests of both the plaintiff and defendant, by decreasing the likelihood of an accident that could result in liability.

Next, defendant asserts that as an alternative to finding that a mortgagor can demonstrate good cause by showing (1) that it can manage the property with greater economic efficiency than a receiver or (2) that the harm to the mortgagor outweighs the harm to the mortgagee, this court should hold that in mortgage foreclosure proceedings involving vacant nonresidential property the mortgagor should be entitled to a presumption that good cause exists to allow it to remain in possession. Defendant argues that the powers of a receiver articulated in section 15-1705(b) of the Act, including securing tenants, collecting rent, insuring the mortgaged real estate against loss by fire or other casualty, employing counsel, custodians and other help, and paying real estate taxes, do not make sense when applied to vacant property, and therefore, there should be a presumption in favor of permitting the mortgagor to retain possession.

We disagree for several reasons. First, the question of whether a different standard should apply to vacant property is not properly before the court, as the property that is the subject of this mortgage is, in fact, not vacant. Although, as the trial court noted, the amount of rent being collected is small in relation to the amount owed on the loan, defendant mischaracterizes the property by calling it vacant since part of one building is being leased and both are being used as parking facilities. Further, defendant's assertion that the statutory powers granted to a receiver are irrelevant when applied to the property at issue in this case is belied by the fact that the receiver's preliminary report indicates that the receiver has undertaken those very same duties by finding ways to maximize the rent on the parking garage, hiring workers to repair damage to the buildings that could result in liability, and ensuring that the proper amount of insurance has been obtained and that invoices and property taxes have been paid. Even if future development of the

property results in tearing down the buildings, these steps are necessary to maximize the current value of the property and, as noted above, to protect the general public, the city, the owner and the lender from liability that may arise from a building in disrepair.

Lastly, the primary rule in statutory construction is to ascertain and give effect to the legislature's intent. To determine the legislature's intent, courts should first look to the language of the statute and accord the language its plain and commonly understood meaning. A court must not read into the plain language exceptions, limitations, or conditions that the legislature did not intend. People v. Ellis, 199 Ill. 2d 28, 39 (2002). Section 15-1701(b)(2) provides that "[i]n all other cases, if (i) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (ii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the mortgagee shall upon request be placed in possession of the real estate, except that if the mortgagor shall object and show good cause, the court shall allow the mortgagor to remain in possession." 735 ILCS 5/15-1701(b)(2) (West 2004). "[A]ll other cases" when read in conjunction with section 15-1701(b)(1), which creates a presumption in favor of the mortgagor's right to possession "[i]n the case of residential real estate," includes mortgage foreclosure cases involving nonresidential real estate, regardless of whether the property is vacant or, as in this case, partially vacant or unoccupied. Any other conclusion would depart from the well-settled rule that courts must not read into a statute exceptions that the legislature did not express. See Ellis, 199 Ill. 2d at 39. If the legislature intended that the presumption in favor of a mortgagee's right to possession would not apply to vacant nonresidential property, it could have easily done so by inserting such an exception into

the statute. The legislature did not do so, and therefore, we are not in a position to assume that the statute means something other than what it says.

Defendant's final contention is that the trial court erred in denying its motion for an evidentiary hearing on whether a receiver should be appointed and that a mortgagor should be granted an evidentiary hearing on the good cause issue as a matter of course, absent good reason not to. Defendant relies on People ex rel. Scott v. Silverstein, 86 Ill. App. 3d 605 (1980), and Home Life, 777 F. Supp. 629 for support. In Silverstein, which predated the 1987 amendments to the Act, the State of Illinois appealed from an order denying its motion for a hearing concerning the appointment of a receiver for an Illinois not-for-profit museum. Silverstein, 86 Ill. App. 3d at 606. The State's motion for the appointment of a receiver alleged that the right of the people of the state to the use and enjoyment of the museum was being frustrated by the depletion, waste, and mismanagement of museum art objects and finances. Silverstein, 86 Ill. App. 3d at 608. After hearing arguments, the trial court denied the State's motion to set a hearing on the appointment of a receiver and denied its motion for the appointment of a receiver. Silverstein, 86 Ill. App. 3d at 608.

This court reversed, holding that "It is our considered opinion that the situation before us as above set forth requires a full evidentiary hearing be held by the trial court on the merits of the issue of appointment of a receiver." Silverstein, 86 Ill. App. 3d at 611. Defendant asserts that Silverstein stands for the proposition that where the propriety of appointing a receiver involves complex factual considerations, the parties are entitled to an evidentiary hearing. However, it is clear that in Silverstein this court limited its holding to the "situation before us," which involved

a museum and not a mortgage foreclosure proceeding. Further, this court stated that under such circumstances, the appointment of a receiver is warranted only when there is no other adequate remedy or means of accomplishing the desired result. Silverstein, 86 Ill. App. 3d at 609. That is clearly not the standard under the Act, where there is a presumption in favor a mortgagee's right to possession of nonresidential property during a mortgage foreclosure proceeding.

A case that is more directly on point is Home Life, 777 F. Supp. 629. In Home Life, defendants contended that because they had made an objection to plaintiff's motion for the appointment of a receiver, they were entitled to an evidentiary hearing under the Act. The district court disagreed, noting that a hearing had already been held and defendants had been given an opportunity to show good cause. Home Life, 777 F. Supp. at 633. The court further noted that it had found that defendants failed to establish good cause during that hearing and in their briefs and concluded that "a further evidentiary hearing" " would only serve to delay the inevitable resolution of plaintiff's motion." Home Life, 777 F. Supp. at 633.

Defendant argues, correctly, that Home Life does not have precedential value, however, we find that it is persuasive authority. Zahl, 365 Ill. App. 3d at 662 (on matters of state law, federal cases are not binding on Illinois courts, but can act as persuasive authority). As in Home Life, in the instant case, both parties submitted briefs on whether a receiver should be appointed and the trial court held two hearings on the issue. Further, the trial court allowed defendant to submit an offer of proof, which essentially made the same arguments that were raised in the brief and during the hearings, namely that the property was purchased with an eye toward retail and hotel development and that steps have been taken since the property was purchased in 1997 to

develop the property. Aside from the fact that this information is not directly relevant to a showing of good cause under section 15-1701(b)(2) of the Act, it had already been presented to and considered by the trial court. An additional evidentiary hearing would not have served any purpose, other than to delay the trial court's hearing on the motion. Therefore, we find that the trial court did not err in denying defendant's motion requesting an evidentiary hearing before appointing a receiver.

## III. CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court.

Affirmed.

STEELE, and COLEMAN, JJ., concur.