2021 IL App (1st) 210070-U

No. 1-21-0070

Second Division
July 27, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| McHENRY SAVINGS BANK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 6264 |
| | ) | |
| MARGARET DANIEL TRUST, KRIS | ) | |
| DANIEL, Individually and as successor | ) | |
| Trustee of the Margaret Daniel Trust; | ) | |
| MARGARET DANIEL; UNKNOWN | ) | |
| OWNERS and NONRECORD | ) | |
| CLAIMANTS, | ) | Honorable |
| | ) | Joel Chupack |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order appointing a receiver is affirmed where plaintiff established a reasonable probability that plaintiff would prevail in a final hearing and defendants failed to show good cause.

¶ 2    Defendants, the Margaret Daniel Trust (Trust) and Kris Daniel, individually and as successor trustee of the Trust, filed this interlocutory appeal, pursuant to Illinois Supreme Court Rule 307(a)(2) (eff. Nov. 1, 2017), from an order of the circuit court appointing a receiver and placing plaintiff, McHenry Savings Bank, in possession of certain real estate. On appeal, defendants argue that this court should reverse the circuit court's order because (1) the Illinois Mortgage Foreclosure Law (IMFL) (735 ILCS 5/15-1101 *et seq.* (West 2020)) does not allow the real estate to be divided into residential and commercial units, (2) plaintiff did not show a reasonable probability that it would prevail in a final hearing, and (3) defendants showed "good cause" as to why a receiver should not be appointed. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Complaint

¶ 5    On October 13, 2020, plaintiff filed a four-count complaint against defendants seeking to foreclose a mortgage on a six-unit building located in the 1000 block of West Columbia Avenue in Chicago, Illinois (the property). Count I of the complaint sought mortgage foreclosure of the property, count II alleged that the Trust breached a promissory note executed in connection with the mortgage, and counts III and IV sought to recover under the commercial guaranties signed by Kris and Margaret Daniel. The complaint identified plaintiff as the "legal holder of the indebtedness" and as "owner of the Mortgages *** by virtue of the fact that it is the original mortgagee." The complaint identified the Trust as the "present owner" of the property and named the Trust, Kris, and Margaret as the "persons *** personally liable for deficiency." The complaint alleged that the Trust defaulted "under the [promissory note] on October 1, 2020, [by failing] to make the required payments of real estate taxes [on the property] for the years 2017, 2018, and

2019." Attached to the complaint were copies of the mortgage document and promissory note, both dated April 20, 2017.

¶ 6                                B. Mortgage Document & Promissory Note

¶ 7    The mortgage document included a "Taxes and Liens" provision stating that the "[g]rantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges, and sewer service charges levied against or on account of the Property." The mortgage document further included an "Event of Default" provision providing that "[f]ailure of grantor within the time required by [the] Mortgage to make any payment for taxes" would constitute a default under the mortgage.

¶ 8    Upon an "Event of Default," the mortgage document states that plaintiff "shall have the right *** without notice to grantor to declare the entire Indebtedness immediately due and payable" (*i.e.*, acceleration). The mortgage document also provides that upon default, plaintiff "shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property." Plaintiff's "right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount."

¶ 9    Like the mortgage document, the promissory note also included a "Default" provision stating that the failure to "comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or *** any other agreement between [plaintiff] and the [Trust]" constitutes an event of default.

¶ 10                              C. Motion for Pre-Judgment Appointment of Receiver

¶ 11    On December 11, 2020, plaintiff filed its motion for pre-judgment appointment of receiver. In its motion, plaintiff noted that the first floor of the property was occupied by Margaret, the

beneficiary of the Trust, as her principal residence. Plaintiff argued that under section 15-1701(b)(1) of the IMFL (735 ILCS 5/15-1701 (West 2020)), five units of the property, those not occupied by Margaret, did not qualify as "residential real estate" for purposes of the appointment of a receiver. However, plaintiff asserted that it was entitled to seek appointment of a receiver for the remaining five units pursuant to section 15-1701(b)(2) of the IMFL. Given the default, the provisions of the note and mortgage, and the affidavit of its chief credit officer, Robert Ollech, plaintiff argued that a receiver should be appointed and placed in possession of the property because there was a reasonable probability that plaintiff would prevail on a final hearing on the cause. Plaintiff further asserted that defendants failed to show good cause why a receiver should not be appointed and placed in possession of the property.

¶ 12    Attached to the motion, *inter alia*, was the affidavit of Ollech. In his affidavit, Ollech described the property as a "six-unit apartment building," with four units "rented to one or more tenants for use as residence by such tenants, one of which is used by [Kris] as a law office and one of which is used as the principal residence of [Margaret]." Ollech averred that the Trust "failed to make the payment of the real estate taxes on the property for the years 2017, 2018 and 2019, which constitutes an event of default under both the Note and the Mortgage." He further averred that "[p]laintiff declared the Note and Mortgage to be in default on October 1, 2020, as a result of the [Trust's] failure to pay the real estate taxes, and accelerated the Note." Although demand for payment had been made, neither the Trust nor any other party had cured the default. Ollech also averred, that as of September 30, 2020, the outstanding amount due on the note was $251,451.11.

¶ 13                    D. Defendants' Response

¶ 14    On January 4, 2021, defendants filed a response to plaintiff's motion. Defendants pointed out that Margaret had "not been served as of the filing of the response." Defendants also argued

that the real estate was residential and not commercial, such that section 15-1701(b)(1) applied rather than section 15-1701(b)(2) of the IMFL. Defendants further asserted that "in light of the nature of alleged default; the remaining one year within which Mortgagor has to redeem the real estate taxes; and the fact that monthly mortgage payments are not in default, *** [no probability existed] that the [plaintiff would] prevail in a final hearing." Defendants argued that the "value of the [property was] more than sufficient to secure [p]laintiff's loan" and thus, "negating any 'cause' for the appointment of a receiver." Defendants asserted that good cause existed for the possession to remain with the Trust. Defendants argued that if a receiver were appointed, the fees payable to an independent receiver would "result in a substantial diversion of funds otherwise utilized to assist in the payment of Margaret's support." As such, they have shown "cause" to reject plaintiff's motion to appoint a receiver.

¶ 15    Attached to the response were copies of the Notice of the Tax Sale and Appraisal. The Notice of Tax Sale, dated September 17, 2019, stated that the property was sold for delinquent taxes on May 8, 2019. The Notice provided that the "period of redemption from the sale will expire on November 17, 2021." The Appraisal, dated April 4, 2017, stated that the estimated market value of the property was $1.2 million as of March 21, 2017.

¶ 16    Plaintiff then filed its reply. Plaintiff asserted that defendants were properly served with notice of the motion to appoint receiver. Plaintiff reiterated that it was presumptively entitled to possession under section 15-1701(b)(2) of the IMFL and had met the requirements for the appointment of a receiver. Plaintiff argued that the value of the property was immaterial, and defendants further failed to show good cause.

¶ 17                              E. Circuit Court Order

¶ 18    On January 12, 2021, the circuit court granted plaintiff's motion and entered an order appointing a receiver. In its written order, the court stated that pursuant to section 15-1701(b)(1) of the IMFL, "a receiver may be appointed for all parts of a multi-dwelling unit not occupied as the principal [residence] of the mortgagor, or where the mortgagor is a trust, a beneficiary of the trust." As such, the court held that a "receiver may be appointed for all parts of [the property except for the first floor], which is occupied by [Margaret]." The court also noted that due notice of the motion had been given pursuant to section 1706(d) of the IMFL (735 ILCS 5/15-1706(d) (2020)). Based on the allegations of the complaint, the terms and provisions of the mortgage and note, and the motion to appoint a receiver, the court held that there was a reasonable probability that plaintiff would prevail on a final hearing in the matter and further that defendant had not shown good cause why the receiver should not be appointed.

¶ 19    On February 5, 2021, the circuit court denied defendants' motion to stay enforcement of the order appointing the pre-judgment receiver pending the outcome of this appeal.

¶ 20                                II. ANALYSIS

¶ 21    On appeal, defendants argue that this court should reverse the circuit court's order appointing a receiver because the IMFL does not allow the property to be divided into residential and commercial units. Defendants further assert that plaintiff did not show a reasonable probability that it would prevail in a final hearing because (1) the complaint was unverified; (2) the affidavit of Ollech contradicted the allegations in the complaint and erroneously stated that the facts were based on his "personal knowledge" and (3) defendants can cure their failure to pay real estate taxes by redeeming the taxes prior to November 17, 2021. Defendants also contend that there is "good cause" as to why a receiver should not be appointed because the value of the property was more than the loan and appointment of a receiver resulted in depriving Margaret of financial support.

¶ 22                                    A. Standard of Review

¶ 23     Prior to addressing the merits, we must determine the standard of review for orders granting a motion to appoint a receiver. Where the circuit court has not made findings of fact following an evidentiary hearing, our standard of review is *de novo*. See *Bank of America, N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 165 (2010) ("[A]lthough we apply a *de novo* standard of review in the instant case, it is foreseeable that in a case in which a trial court has held a full evidentiary hearing on a motion to appoint a receiver, this court could find that an abuse of discretion standard or a manifest weight of the evidence standard would be appropriate"). As the parties do not dispute and the record does not indicate that the circuit court held an evidentiary hearing in the instant case, we review its order *de novo.*

¶ 24     We also review *de novo* issues of statutory construction. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 10. The primary rule of statutory construction is to "ascertain and give effect to the intent of the legislature." *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 460 (2006). The most reliable indicator of that intent is the "language of the statute, which is to be given its plain and ordinary meaning." *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). In determining the plain meaning of statutory terms, a court must "consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Id.* When the statutory language is clear and unambiguous, a court may not depart from the plain language by reading into the statute " 'exceptions, limitations or conditions that the legislature did not express.' " *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15 (quoting *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)). The language of the statute must be "applied as written, without resort to extrinsic aids of statutory construction." *Solon*, 236 Ill. 2d at 440.

¶ 25                                    B. Application of the IMFL

¶ 26    Defendants assert that a mortgagee is not entitled to "pre-judgment possession [of the property]," regardless of "whether the real estate is '[r]esidential' or [c]ommercial." Section 15-1701 of the IMFL pertains to the right to possession during foreclosure. 735 ILCS 5/15-1701 (West 2020). Section 15-1701(b) sets forth two different presumptions based on whether the property at issue is "residential real estate." *Id.* § 15-1701(b). Section 15-1701(b) states:

"(b) Pre-Judgment. Prior to the entry of a judgment of foreclosure:

(1) In the case of residential real estate, the mortgagor shall be entitled to possession of the real estate except if (i) the mortgagee shall object and show good cause, (ii) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (iii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the court shall upon request place the mortgagee in possession. If the residential real estate consists of more than one dwelling unit, then for the purpose of this Part residential real estate shall mean only that dwelling unit or units occupied by persons described in clauses (i), (ii) and (iii) of Section 15-1219.

(2) In all other cases, if (i) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (ii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the mortgagee shall upon request be placed in possession of the real estate, except that if the mortgagor shall object and show good cause, the court shall allow the mortgagor to remain in possession." 735 ILCS 5/15-1701(b) (West 2020).

¶ 27    The clear and unambiguous language of section 15-1701(b)(2) states that in foreclosure matters other than those involving residential real estate, a mortgagee upon request shall be placed in possession of the property prior to the entry of a judgment of foreclosure if the mortgagee shows:

(1) the mortgage documents authorize such possession, and (2) "there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause." 735 ILCS 5/15-1701(b)(2) (West 2020). Where the two requirements of section 15-1701(b)(2) are satisfied, the burden then shifts to the mortgagor to object and show good cause as to why the mortgagor should be entitled to remain in possession. *Id.*

¶ 28     By contrast, section 15-1701(b)(1) provides that the mortgagor of residential real estate has possession absent the mortgagee's objection and showing of good cause. 735 ILCS 5/15-1701(b)(1) (West 2020); *Travelers Insurance Co. v. LaSalle National Bank*, 200 Ill. App. 3d 139, 143 (1990). Defendants contend that the use of the term "entitled" in section 15-1701(b)(1) support a mortgagor's continued possession of residential real estate and therefore, the "terms of section 5/15-1701(b) do not 'entitle' a [m]ortgagee to pre-judgment possession, whether the real estate is '[r]esidential' or [c]ommercial." However, as the Second District noted in *Travelers Insurance*, the difference between the two sections is that "the presumptive right to possession during foreclosure lies with the mortgagor [as to] residential real estate and with the mortgagee [as to] nonresidential real estate." *Travelers Insurance Co.*, 200 Ill. App. 3d at 143. Additionally, section 15-1701(b)(2) clearly provides that the mortgagee is entitled to possession of non-residential property as demonstrated by use of the term "shall," which is "mandatory and not permissive." See *Mellon Bank, N.A. v. Midwest Bank & Trust Co.*, 265 Ill. App. 3d 859, 866 (1993). Contrary to defendants' assertion, section 15-1701(b) of the IMFL does provide a distinction between residential and non-residential property. It further states that a mortgagee has the right to possession of non-residential property after the statutory requirements have been satisfied. Therefore, a mortgagee is entitled to pre-judgment possession of property.

¶ 29    Next, defendants argue that the circuit court erred in appointing a receiver for the five units because the property is "not a mixed-use structure; nor is it a stand-alone structure rendering it amenable to a split between '[r]esidential' and '[c]ommercial' property." Defendants contend that the property is a "six unit residential building in which the families live independently of each other; the Mortgagor is a Trust whose Trustee executed the Mortgage and Promissory Note on its behalf; and the sole income beneficiary of the Trust ***, [Margaret,] occupies one of the dwelling units as her primary residence." Defendants further note that "there was no consideration as to how the practicalities, such as maintenance, and the provision of heat and water, would be handled between the 1/6 [r]esidential portion and the 5/6 [c]ommercial portion." Essentially, defendants contend that section 15-1701(b)(1) applies here as the property was residential rather than commercial and therefore, defendants as mortgagors are entitled to possession during foreclosure.

¶ 30    However, section 15-1701(b)(1) of the IMFL states that "[i]f the residential real estate consists of more than one dwelling unit, then for the purpose of this Part residential real estate shall mean only that dwelling unit or units occupied by persons described in clauses (i), (ii) and (iii) of [s]ection 15-1219." 735 ILCS 5/15-1701(b)(1) (West 2020). Section 15-1219, in relevant part, defines "residential real estate" as:

> "any real estate, * * * which * * * is *occupied as a principal residence* either (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse or that mortgagor's descendants, or (ii) if a mortgagor is a trustee of a trust * * *, by a beneficiary of that trust," *** or (iii) if a mortgagor is a corporation, by persons owning collectively at least 50 percent of the share of voting stock." (Emphasis added.) 735 ILCS 5/15-1219 (West 2020).

¶ 31 Contrary to defendants' assertion that "this language was limited to specifying the controlling presumption and burden of proof – and not recharacterizing the real estate," section

15-1701(b)(1) provides that if the real estate consists of multiple units, as is the case here, only the dwelling unit occupied by an individual mortgagor, or the trust beneficiary would be deemed residential. Here, only one of the units was occupied by Margaret as the beneficiary of the Trust. The remaining five units were not occupied by Margaret. Therefore, the circuit court did not err in finding that a receiver may be appointed for all parts of the property except for the first floor, which is occupied by Margaret.

¶ 32    Briefly, we note that defendants argue that the circuit court, in its November 18, 2020 order, had initially made the finding that the property was residential. Defendants also contend that plaintiff had conceded that the property was residential in its motion to appoint a pre-judgment receiver. We again reiterate that our review is *de novo*. "Under the *de novo* standard of review, the reviewing court does not need to defer to the trial court's judgment or reasoning." (Internal citations omitted.) *Nationwide Advantage Mortg. Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 20. Rather, our review of the issues is "completely independent of the trial court's decision." *Id.* Nevertheless, the record shows that the November 18, 2020 order pertained to defendants' motion to quash service of process and motion for sanctions. Although the order stated "[t]his proceeding involves residential real estate, as that term is defined in Section 5/15-219," the court did not make that finding in relation to section 15-1701(b)(1) of the IMFL. On the same note, although plaintiff stated in its motion that the "Property does meet the definition of 'Residential Real Estate' as set forth in Section 15-219," plaintiff argued that the five units, those not occupied by Margaret, did not qualify as "residential real estate" under section 15-1701(b)(1) of the IMFL.

¶ 33                1. Terms of Mortgage or Other Written Instruments

¶ 34    Having found that the five units were not residential for purposes of section 15-1701 of the IMFL, we must now determine whether plaintiff has satisfied the two requirements set forth in

section 15-1701(b)(2) which would entitle plaintiff to possession. The first requirement pertains to whether the terms of the mortgage or other written instrument authorize possession of the property by the mortgagee. 735 ILCS 5/15-1701(b)(2) (West 2020). Here, plaintiff submitted to the circuit court copies of the loan documents, including the mortgage document and promissory note. Failure to pay taxes constitutes an "event of default" under the loan documents. In the event of default, the mortgage document authorizes the possession of the property. As such, the first requirement has been satisfied where the terms of the loan documents authorize possession upon mortgagor's failure to pay taxes.

¶ 35                           2. Reasonable Probability of Prevailing

¶ 36    Turning to the second requirement, defendants dispute that there is an actual default. Generally, a proven default establishes a reasonable probability of succeeding in a mortgage foreclosure action. See *Brown County State Bank v. Kendrick*, 140 Ill. App. 3d 538, 541 (1986) (citing *Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 986 (1983); *Mellon*, 265 Ill. App. 3d 859, 868 (1993). "Whether a default in fact exists will typically turn on the interpretation of documentary evidence — a non-discretionary function." *Mellon*, 265 Ill. App. 3d at 868.

¶ 37    Here, plaintiff alleges that defendants defaulted by failing to pay real estate taxes. In support, plaintiff offers its complaint, and the affidavit of Ollech. See 735 ILCS 5/15-1706(a) (West 2020) (a motion requesting that "the mortgagee be placed in possession or that a receiver be appointed *** shall be supported by affidavit or other sworn pleading."). Defendants argue that the complaint is unverified and therefore, does not prove default. Even if we did not consider the complaint, the affidavit of Ollech, plaintiff's chief credit officer, was sufficient to establish default. In his affidavit, Ollech averred that the Trust "failed to make the payment of the real estate taxes

on the property for the years 2017, 2018 and 2019, which constitutes an event of default under both the Note and the Mortgage." He further stated that "[p]laintiff declared the Note and Mortgage to be in default on October 1, 2020" and had accelerated the note.

¶ 38 Defendants contend that the affidavit contradicts the allegations of the complaint, Ollech lacked personal knowledge as to the status of taxes, and "no documentation issued by the Cook County Treasurer substantiating that assertion was attached to [the affidavit]." Notwithstanding the minor deficiencies, both the affidavit and the complaint alleged failure to pay taxes as the event that triggered the default. As such, the affidavit was consistent with the allegations of the complaint. Additionally, in *Mellon,* this court found that an affidavit from mortgagee's vice president stating that mortgagor failed, *inter alia*, to pay real estate taxes and was in default was sufficient. *Mellon Bank*, 265 Ill. App. 3d at 869. As such, we find that the affidavit of plaintiffs' chief credit officer, Ollech was sufficient to prove default as to the taxes.

¶ 39 Defendants further argue that pursuant to the Notice of Tax Sale, they have until November 17, 2021 or approximately one year from the entry of the circuit court's order appointing a receiver, within which to "redeem" the real estate taxes. Essentially, defendants contend that they are not in default by virtue of their right to redeem. Defendants provide no citation to any controlling statutory authority or case law to support their contentions on appeal. " 'A court of review is entitled to have the issues clearly defined and to be cited pertinent authority.' " *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36 (quoting *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56). A party fails to fulfill the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) if the party does not present argument along with citations to relevant supporting authority. *Lake County*, 2014 IL 115805, ¶ 36. As a result, we find that defendants have forfeited their argument on appeal. *Id.*

¶ 40    Forfeiture aside, we nevertheless find defendants' argument unavailing. The mortgage document clearly states that the "grantor shall pay when due (and in all events prior to delinquency) all taxes *** levied against or on account of the Property." The Notice of Tax Sale states that the property was sold on May 8, 2019 for delinquent taxes, indicating that the Trust did not pay the taxes when due or prior to delinquency. The mortgage document further provides that "[f]ailure of grantor within the time required by [the] Mortgage to make any payment for taxes" would constitute a default under the mortgage and that plaintiff shall have the right "to declare the entire Indebtedness immediately due and payable." As such, pursuant to the terms of the mortgage, defendants' right to redeem the taxes in the future does not cure the default because the entire loan balance was immediately due. Therefore, we find that plaintiff has established default and thus, a reasonable probability that it would prevail.

¶ 41                                    3. Good Cause

¶ 42    Defendants argue that section 15-1701(b)(2) of the IMFL allows a mortgagor to remain in possession of the property subject to the foreclosure proceedings based on a showing of "good cause." 735 ILCS 5/15-1701(b)(2) (West 2020). Defendants contend that they made a showing of good cause and the circuit court should have denied the appointment of a receiver because the property had an appraised value of $1.2 million in 2017, and the principal loan balance was $250,000. As such, defendants assert that "the value of the [property] was more than sufficient security for the loan *** [and thus,] substantiating 'cause' for retaining the right of Possession in the Trust, as a mortgagor."

¶ 43    Second, defendants argue that they established good cause because the payment of the receiver's fees resulted in a "substantial diversion of funds otherwise utilized to assist in the payment of [Margaret's] support." Defendants note that Margaret is the "sole income beneficiary

of the [Trust]," which is a "Testamentary Trust" established by the "Last Will and Testament of [her] Mother" to "ensure Margaret's comfort in the payment of her living expenses." Defendants state that Margaret is an 86-year-old woman "who has been disabled since birth and has lived in an apartment [of the property] for over 66 years." Defendants contend that with an appointment of a receiver, "the fees payable to an allegedly independent receiver *** resulted in a substantial diversion of funds otherwise utilized to [support Margaret]." As such, the harm was "irreparable and *** material to the issue of 'cause.' "

¶ 44    Our research has revealed a dearth of Illinois cases discussing what constitutes a good cause. See *CenterPoint Properties Trust v. Olde Prairie Block Owner, LLC*, 398 Ill. App. 3d 388, 396 (2010) (discussing potential arguments for a mortgagor to establish good cause, including that the appointment of a receiver would impede an imminent transaction such as investment or refinancing). Cases have, instead, discussed what does not constitute "good cause." See *Bank of America, N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 176 (2010) (qualifications of current property possessor and assertion that the proposed receiver was unfit do not constitute good cause); *CenterPoint Properties Trust*, 398 Ill. App. 3d at 396 (potential impediments to the mortgagor's ability to refinance, sell or develop the property are not good cause); *Travelers Insurance Co.*, 200 Ill. App. 3d at 139 (mortgagee's failure to allege fraud, mismanagement waste or other dissipation of the property does not constitute good cause). None of these cases involve the same "good cause" arguments as advanced by defendants, but they, nevertheless, provide a framework in which to address defendants' claims of good cause.

¶ 45    With respect to defendants' argument that the appraised value of the property is greater than the balance of the loan, we note that the mortgage document clearly provides that the "right to the appointment of a receiver shall exist whether or not the apparent value of the Property

exceeds the indebtedness by a substantial amount." By executing the mortgage, defendants acknowledged that the right to appoint a receiver existed regardless of the value of the property. See *Bagley v. Illinois Trust & Sav. Bank*, 199 Ill. 76, 79 (1902) ("Such an agreement in the mortgage is entitled to weight in determining whether the power of the court to make the appointment should be exercised or not."). When such a provision is contained in the mortgage and the parties in possession of the premises fail to pay taxes on the property for years, we find that the appointment of a receiver becomes necessary, and equity requires that the agreement be enforced. Additionally, in nearly every foreclosure case, the appointment of a receiver will involve payment of receiver fees and thus, the financial burden associated with it. If we were to hold that a mortgagor can establish good cause simply by showing that the appraised value of the property is greater than the loan balance or that the payment of the receiver's fees in the appointment of a receiver resulted in financial hardship, such "exception would swallow the rule." *CenterPoint Properties Trust*, 398 Ill. App. 3d at 396. While the appraised value of the property may be greater and the fees associated with the appointment of a receiver may impose financial hardship, it is "insufficient to overcome the statutory presumption in favor of placing the mortgagee in possession." *Id.* Therefore, we find that defendants have failed to meet their burden of showing good cause.

¶ 46   We briefly note that in their opening brief, defendants state, without more, that plaintiff "had failed to perfect service on [Margaret] prior to the filing of its [m]otion." Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) provides that an appellant's brief must contain contentions and the reasons therefor, with citation to the authorities upon which the appellant relies. As plaintiff notes, it is unclear whether defendants are arguing that the failure to perfect service was also a "good cause" to deny the motion appointing a receiver. Defendants do not clearly state their

argument and present a cohesive legal argument or a reasoned basis for their argument with citation to authorities. Because defendants have failed to comply with Rule 341(h)(7), defendants have forfeited this argument. See *In re Marriage of Petrik,* 2012 IL App (2d) 110495, ¶ 38 ("The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 47    In sum, we find that plaintiff is entitled to possession of the property and appointment of receiver was proper where defendants failed to show good cause.

¶ 48                                III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court.

¶ 50    Affirmed.